WALTERS v SNYDER

Docket No. 215536. Submitted December 8, 1999, at Grand Rapids.
Decided January 14, 2000, at 9:20 A.M.

Harold E. Walters, Jr., and Margaret M. Walters brought an action in
the St. Joseph Circuit Court against Steven D. Snyder and Mona L.
Gillispie, seeking an order requiring Snyder (hereafter defendant)
to remove a fence and garage that encroached on the plaintiffs'
property. The defendant responded that he had equitable title to
the strip of property in dispute because the plaintiffs had acqui-
esced to certain bushes representing the boundary line between the
parties' properties for the fifteen-year period required by MCL
600.5801(4); MSA 27A.5801(4). Following a bench trial, the court,
James Noecker, J., entered an order requiring the defendant to
remove the fence and garage, finding that the defendant failed to
prove the affirmative defense of acquiescence by clear and positive
proof. The Court of Appeals, BANDSTRA, P.J., and HOEKSTRA and J. M.
BATZER, JJ., reversed and remanded, holding that the trial court
erred in requiring that acquiescence be established by clear and
positive proof rather than by a preponderance of the evidence. 225
Mich App 219 (1997). On remand, the trial court again ordered the
defendant to remove the fence and garage, finding that the plain-
tiffs had not acquiesced absent proof of their implied or passive
assent based on knowledge, notice, or recognition of some event,
conduct, or circumstance occurring continuously for the statutory
period. The defendant appealed.

The Court of Appeals *held*:

A claim of acquiescence to a boundary line based on the statu-
tory period of fifteen years requires merely a showing that the par-
ties acquiesced in the line and treated the line as the boundary for
the statutory period, irrespective of whether there was a bona fide
controversy regarding the boundary. A claim of acquiescence does
not require that the possession be hostile or without permission.
The key inquiry is whether the parties treated a particular bound-
ary line as the property line. In this case, the trial court, in focusing
its analysis on the necessity of demonstrating the plaintiffs' notice
of an objective transaction continuously in evidence, required a
level of specificity in the parties' perceptions and behavior that is
not demanded by those cases that serve as precedent for the doc-

trine of acquiescence. A preponderance of the evidence established that the parties or their predecessors in title treated the bush line as the boundary line for a period that meets or exceeds the fifteen-year requirement of the statute.

Reversed and remanded for a declaration establishing the boundary line at the fence line.

BOUNDARIES — ACQUIESCENCE.

A claim of acquiescence to a boundary line based on the statutory period of fifteen years requires merely a showing that the parties acquiesced in the line and treated the line as the boundary line for the statutory period, irrespective of whether there was a bona fide controversy regarding the boundary, and does not require the possession to be hostile or without permission (MCL 600.5801[4]; MSA 27A.5801[4]).

*Charles E. Martell,* for the plaintiffs.

*James Shek,* for the defendant.

Before: MURPHY, P.J., and HOOD and NEFF, JJ.

PER CURIAM. Defendant Steven D. Snyder appeals as of right an amended judgment ordering him to remove a fence and garage that encroach on the property of plaintiff Harold E. Walters, Jr.[1] We reverse and remand.

In a previous opinion this Court discussed the facts underlying this dispute:

This case arises from a boundary dispute between defendant and plaintiff, the respective owners of lots 3 and 4 of the platted subdivision of Helena Beach in St. Joseph County. Both lots were originally platted with 50' by 150' dimensions, both front Portage Lake, and both lots are bounded on the rear by Lake Avenue. The lots appeared to be separated by a line of bushes and small trees situated along the northern border of lot 3 and the southern border of lot 4.

---

[1] Plaintiff Margaret Mary Walters is now deceased.

Plaintiff inherited lot 4 in 1965 from his father, who purchased the property in 1956. Defendant bought lot 3 in 1991 from Richard and Nancy Speece, who purchased the property in 1981 from Edward and Virginia Culp, who purchased the property in 1973 from Helen Runion. A survey done before the sale of the property to defendant in 1991 revealed that both a fence and part of a garage that had been constructed on lot 3 sometime after May 1984 actually intruded onto the southern portion of lot 4 by approximately twelve feet and that the line of bushes was not the platted boundary line.

In 1993, plaintiff filed suit, requesting the trial court to order defendant to remove the fence and garage that were unlawfully encroaching on his property. Defendant responded that he had equitable title to that strip of property because plaintiff had acquiesced to the bushes representing the boundary line between the properties for the fifteen-year statutory period.

Following a bench trial, the trial court issued an opinion stating that it was unable to find "clearly and positively or affirmatively" that plaintiff had acquiesced to the bushes representing the boundary line between the properties at issue. Accordingly, defendant was ordered to remove the garage and fence from plaintiff's property. [*Walters v Snyder*, 225 Mich App 219, 220-221; 570 NW2d 301 (1997).]

In his earlier appeal to this Court, defendant argued that the circuit court had erred in requiring him to prove his affirmative defense of acquiescence by "clear and positive proof" rather than a mere preponderance of the evidence. This Court agreed and remanded the case so that the circuit court could reconsider its decision "in light of the lower, correct standard." *Id.* at 224. After reconsideration, the circuit court released the presently appealed supplemental opinion and revised judgment, again finding in favor of plaintiff.

In this second appeal, defendant argues that while applying the appropriate standard of proof on reconsideration, the trial court clearly erred in concluding that plaintiff had not acquiesced to the bush line as the boundary line. This Court reviews the findings of fact by a trial court sitting without a jury under the clearly erroneous standard. *Gumma v D & T Constr Co*, 235 Mich App 210, 221; 597 NW2d 207 (1999); MCR 2.613(C). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed. *Gumma*, *supra* at 221. In contrast, we review a trial court's conclusions of law de novo. *Id.* Furthermore, where the trial court's factual findings may have been influenced by an incorrect view of the law, an appellate court's review of those findings is not limited to clear error. *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990). In this case we conclude that on reconsideration the circuit court proceeded under an incorrect view of the doctrine of acquiescence. The court's factual findings, thus influenced, were erroneous.

In remanding this action on defendant's first appeal, this Court noted:

> [A] claim of acquiescence to a boundary line based upon the statutory period of fifteen years, MCL 600.5801(4); MSA 27A.5801(4), requires merely a showing that the parties acquiesced in the line and treated the line as the boundary for the statutory period, irrespective of whether there was a bona fide controversy regarding the boundary. *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (1996). A claim of acquiescence does not require that the possession be hostile or without permission. [*Walters*, *supra* at 224.]

Three theories of acquiescence are in fact noted by *Sackett, supra*: (1) acquiescence for the statutory period, (2) acquiescence following a dispute and agreement, and (3) acquiescence arising from intention to deed to a marked boundary. As indicated by the passage above, the relevant theory in this case is acquiescence for the statutory period.

On remand, as it had done on first consideration, while acknowledging that neither controversy nor hostility were required to establish acquiescence, the circuit court ultimately concluded that implied or passive assent to a boundary line had to be based on knowledge, notice, or recognition of some event, conduct, or circumstance occurring continuously for the statutory period. The circuit court effectively established as a necessary "element" of acquiescence, the continuous existence of an objective transaction. The court then separately analyzed the events or acts referenced by the parties as demonstrative of their understanding regarding the boundary line. Finding that the fence provided the best example of an objective transaction on which to base notice, the court determined that acquiescence in the fence line as a boundary could be traced only as far back as 1984 or 1985, whenever the fence and garage were constructed. The court then concluded that with regard to the various evidence concerning plaintiff's alleged acquiescence to the bush line as a boundary before 1984, there had been no continuous act or transaction such that acquiescence could be found.

Michigan precedent, however, has not defined an explicit set of elements necessary to satisfy the doctrine of acquiescence. Rather, the courts have discussed the doctrine in more general terms. For exam-

ple, our Supreme Court has noted: "It has been repeatedly held by this court that a boundary line long treated and acquiesced in as the true line ought not to be disturbed on new surveys. . . . Fifteen years' recognition and acquiescence are ample for this purpose." *Johnson v Squires*, 344 Mich 687, 692; 75 NW2d 45 (1956), quoting *Dupont v Starring*, 42 Mich 492, 494; 4 NW 190 (1880) (citations omitted). This Court has most recently indicated that applicability of the doctrine commonly arises where "[a]djoining property owners [mistakenly] treat a boundary line, typically a fence, as the property line." *Sackett, supra* at 681-682, quoting *Kipka v Fountain*, 198 Mich App 435, 438; 499 NW2d 363 (1993).

These and other cases have merely inquired whether the evidence presented establishes that the parties *treated* a particular boundary line as the property line. We conclude, therefore, that in focusing its analysis on the necessity of demonstrating plaintiff's notice of an objective transaction continuously in evidence, the trial court appears to have required a level of specificity in the parties' perceptions and behavior not demanded by those cases previously applying the doctrine. Viewing the evidence as a whole, as opposed to examining the various occurrences in isolation, the conduct of the parties establishes that while a precise line was never acknowledged, the boundary was understood to have run along a line approximated by the bushes. Thus, in the absence of the heretofore unnecessary "element" that appears to have guided the trial court's analysis, we believe that a preponderance of the evidence demonstrates that the parties "treated" the bush line as the approximate property line. See *Walters, supra* at 224.

The testimony in this case reveals that, until 1991, the owners of both lots were ignorant of the true location of the boundary line that divided lots 3 and 4. However, evidence established that the respective owners of lot 3, dating back to at least 1973, believed that the north boundary to lot 3 was the bush line. According to the testimony, all owners of lot 3 consistently mowed grass to the immediate south side of the bushes. In addition, previous owners of lot 3 commonly stacked firewood immediately adjacent to the bushes. Eventually, improvements of some cost were made on the disputed property when in 1984 or 1985 the garage and fence were built. A neighbor also testified that the belief in the community was that the bushes marked the boundary between lots 3 and 4. On this evidence it is clear that defendant's predecessors in title treated the line of bushes as the boundary between lots 3 and 4 for the statutory period.

As for plaintiff's understanding regarding the boundary line, the testimony established that plaintiff used his property only as a summer residence. Thus, for at least twenty years preceding this action plaintiff was only at lot 4 for a few weeks out of the year. Testimony did indicate that plaintiff occasionally trimmed the south side of the bushes and that plaintiff's lot 5 neighbor occasionally mowed plaintiff's grass in his absence.[2] However, plaintiff himself testified that he believed that the bush line approximated the property line, and also that he was aware that "everybody else" thought the property line was marked by the bushes. Plaintiff further testified to his

---

[2] Plaintiff's lot 5 neighbor, Sharon Skinner, testified that in "keeping up" plaintiff's yard she would mow around the bushes, making one or two passes on the south side.

surprise when made aware that the true boundary was actually twelve feet south of the bush line, stating that the fact "knocked me off the stool."

We find that defendant proved by a preponderance of the evidence that all relevant parties treated the bush line as the boundary line of the two lots. We further find that the trial court's erroneous application of the doctrine of acquiescence, thus influencing its factual findings, led to its contrary conclusion. *Beason, supra.* Accordingly, we reverse the judgment of the trial court and remand for a declaration establishing the boundary line of the property at the fence line.[3]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

[3] The evidence indicates that the bush line, considered by the parties to *approximate* the boundary line, is a row of sporadically planted bushes and small trees that begins at Lake Avenue and extends toward Portage Lake for approximately one-third of the length of the property. Defendant indicated during oral argument that he sought a judgment establishing the boundary line at the fence, which, constructed in conjunction with the garage, sits approximately two to three feet south of the bushes and extends the full length of the property from the road to the lake. Given the testimony indicating that plaintiff occasionally made use of a two- to three-foot strip of the property to the south of the bushes, we conclude that the fence is the most appropriate marker at which to establish the boundary.