PARKWOOD LIMITED DIVIDEND HOUSING ASSOCIATION v STATE HOUSING DEVELOPMENT AUTHORITY (ON REMAND)

Docket Nos. 218433, 229448. Submitted August 6, 2003, at Lansing. Decided September 16, 2003, at 9:25 A.M. Leave to appeal sought.

Parkwood Limited Dividend Housing Association brought an action in the Wayne Circuit Court against the Michigan State Housing Development Authority (MSHDA), seeking a declaratory judgment that money in certain reserve accounts required in an agreement between the parties relating to a mortgage loan extended by the defendant to the plaintiff would belong to the plaintiff upon prepayment of the mortgage. The court, Kathleen I. MacDonald, J., dismissed the action, ruling that the Court of Claims has exclusive jurisdiction over the case. The plaintiff appealed the decision and also refiled its complaint in the Court of Claims. The Court of Claims, Lawrence M. Glazer, J., on motions by the parties for summary disposition, entered a judgment for the defendant, which the plaintiff also appealed. The appeals were consolidated, and the Court of Appeals, SAWYER and OWENS, JJ. (COOPER, P.J., dissenting), in an unpublished opinion per curiam, issued October 26, 2001 (Docket Nos. 218433, 229448), reversed both lower courts and remanded the matter to the circuit court, holding that the circuit court, not the Court of Claims, has subject matter jurisdiction over a declaratory judgment complaint that does not seek money damages. On appeal by the defendant, the Supreme Court reversed and remanded the matter to the Court of Appeals for consideration of the merits of the Court of Claims rulings after holding that the Court of Claims has exclusive jurisdiction over the plaintiff's claim. 468 Mich 763 (2003).

On remand, the Court of Appeals *held*:

The Court of Claims did not err in granting the defendant's motion for summary disposition because a limited dividend housing association such as the plaintiff dissolves upon satisfaction of an MSHDA mortgage and the defendant is statutorily authorized to retain the accounts at issue.

1. A limited dividend housing association, whose members agree to limit their return on investment to a MSHDA-determined rate in exchange for a low interest loan and other benefits, exists only in

the context of receiving a loan from the defendant. Once a loan is repaid, the association's obligation to restrict its members' annual dividends would be lifted and the association would no longer be a limited dividend entity as contemplated in MCL 125.1401 *et seq.*

2. MCL 125.1493(b) provides that a member of a limited dividend housing association shall at no time receive anything beyond the member's initial investment and the limited dividend, and that upon dissolution of the limited dividend housing association, any surplus in excess of those amounts shall be paid to the MSHDA or to any other regulating governmental body as the MSHDA directs. MCL 125.1494, however, provides that the term "surplus" shall not be deemed to include any increase in the assets of the association by reason of reduction of mortgage or sale of appreciated assets. The express mention in MCL 125.1494 of those items that are not to be deemed as surplus suggests the exclusion of the reserve accounts at issue from those that should not be deemed as surplus payable to the MSHDA upon the dissolution of a limited dividend housing association.

Affirmed.

MORTGAGES — MICHIGAN STATE HOUSING DEVELOPMENT AUTHORITY — LIMITED DIVIDEND HOUSING ASSOCIATIONS — DISSOLUTION.

A limited dividend housing association organized as a limited partnership and holding a mortgage loan from the Michigan State Housing Development Authority dissolves upon satisfaction of the mortgage (MCL 125.1444, 125.1491).

*Kemp, Klein, Umphrey, Edelman & May, P.C.* (by *Richard Bisio*), for the plaintiff.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Terrence P. Grady* and *Nancy A. Piggush,* Assistant Attorneys General, and *Miller, Canfield, Paddock & Stone, P.L.C.* (by *Carl H. von Ende, Frederick A. Acomb,* and *Robert E. Gilbert*), Special Assistant Attorneys General, for the defendant.

ON REMAND

Before: COOPER, P.J., and SAWYER and OWENS, JJ.

OWENS, J. Our Supreme Court has remanded this case to our Court with instructions to consider the substantive merits of plaintiff's appeal. 468 Mich 763 (2003). Plaintiff had sought a declaratory judgment regarding whether its potential prepayment of a mortgage issued by defendant would entitle it to accounts funded in accordance with the loans. Defendant moved for summary disposition, contending that prepaying the mortgage would dissolve plaintiff and that the accounts in question would be "surplus," MCL 125.1493(b), thereby entitling defendant to own those accounts. The Court of Claims agreed and granted defendant's motion for summary disposition. Plaintiff challenges that ruling, as well as the Court of Claims ruling denying plaintiff's motion for summary disposition. We affirm.

## I. FACTUAL OVERVIEW AND PROCEDURAL HISTORY

As noted in our earlier opinion, plaintiff is a limited partnership owning and operating a multiunit apartment complex. The apartment complex was financed by a mortgage between the parties in 1973. To qualify for the mortgage, plaintiff was organized as a limited dividend housing association pursuant to MCL 125.1491. The parties also executed a "regulatory agreement" relating to the operation of the mortgaged property. The regulatory agreement required plaintiff to deposit funds into several reserve accounts.

In 1998, plaintiff informed defendant that it intended to prepay its mortgage, and asked whether the amounts in the reserve accounts would be credited toward the amount due under the mortgage or paid to plaintiff after satisfaction of the mortgage. Defendant replied that it would, instead, retain the

money in three of the reserve accounts as "surplus" pursuant to MCL 125.1493(b) and the agreements between the parties. MCL 125.1493(b) provides that, upon dissolution of a limited dividend housing association, "any surplus in excess of those amounts shall be paid to the authority or to any other regulating government body as the authority directs."

In light of defendant's response, plaintiff did not prepay the mortgage. Instead, plaintiff sought a judicial declaration regarding which party would be entitled to the accounts if plaintiff opted to prepay the mortgage. The parties filed cross-motions for summary disposition.

In granting defendant's motion for summary disposition, the Court of Claims opined that allowing plaintiff to keep the money in the accounts would directly contravene the legislative intent of placing a cap on the association members' investment return. The court ruled that prepayment of the mortgage would be tantamount to dissolving the limited dividend housing association because the unique statutory relationship between plaintiff and defendant would no longer exist. The court further ruled that the money in the accounts was, in fact, surplus.

On appeal, plaintiff contends that it did not dissolve, as contemplated by MCL 125.1493(b). Plaintiff further contends that the money in the reserve accounts was not a "surplus."

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). Here, the facts

are largely undisputed; instead, we are presented with legal questions involving statutory interpretation. We review de novo issues of statutory construction. *Ypsilanti Housing Comm v O'Day*, 240 Mich App 621, 624; 618 NW2d 18 (2000). In regard to statutory construction, we have opined:

> The principal goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. In determining intent, this Court first looks at the specific language of the statute. If the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor permitted, unless a literal construction of the statute would produce unreasonable and unjust results inconsistent with the purpose of the statute. In construing statutes, the court should avoid any construction which would render a statute, or any part of it, surplusage or nugatory. [*Id.* at 624-625 (citations omitted).]

Further, we review de novo conclusions of law. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). Finally, we also review de novo the interpretation of contract provisions. *Rednour v Hastings Mut Ins Co*, 468 Mich 241, 243; 661 NW2d 562 (2003).

### III. ANALYSIS

Defendant, the Michigan State Housing Development Authority (MSHDA), was created by our Legislature in 1966. MCL 125.1401 *et seq.* Defendant lends money to various entities, such as nonprofit housing corporations and limited dividend housing associations, to construct or rehabilitate multifamily housing projects, MCL 125.1444. See OAG, 1989-1990, No 6590, p 157 (June 27, 1989). The Attorney General's opinion further observed:

> Profit motivated developers usually choose to form a limited dividend housing association (association) to function as the borrowing entity. The association agrees to rent a certain portion of the total units in the housing project to persons of low and moderate income. The association investors agree to limit their return on their investment to a certain percentage as determined by the Authority at the time the loan is made. In return, the association receives benefits such as a below market interest rate on the loan, federal or state rent subsidies, or interest rate subsidies and/or various other tax benefits. [*Id.* at 157-158.]

A limited dividend housing association "includes general or limited partnerships, limited liability companies, joint ventures, or trusts, as any such entities shall be approved by resolution of the authority." MCL 125.1491.

Here, plaintiff is a limited partnership that obtained its loan from defendant after being approved by defendant as a limited dividend housing association.[1] Plaintiff's partnership agreement was, therefore, required to provide that each member would "at no time . . . receive in excess of the face value of the investment attributable to his or her respective interest plus cumulative dividend payments at a rate which the authority determines to be reasonable and proper, computed from the initial date on which money was paid . . . in consideration for the interest . . . ." MCL 125.1493(b). The regulatory agreement between the parties limited plaintiff's members to receiving annual distributions of no more than 6% of the member's initial investment. In addition, plaintiff's

---

[1] Plaintiff's limited dividend housing association agreement recognized that it took the form of a limited partnership. The mortgage, mortgage note, and regulatory agreement signed by the parties each referred to plaintiff as "Parkwood Limited Division Housing Association, a Michigan limited partnership."

partnership agreement was required to provide that "upon dissolution of the limited dividend housing association, any surplus in excess of those amounts shall be paid to the authority or to any other regulating body as the authority directs." MCL 125.1493(b). As noted above, we must determine whether the trial court erred in ruling that plaintiff's prepayment of its mortgage would be tantamount to a dissolution of the limited dividend housing association.

Michigan appellate courts have not yet addressed whether dissolution occurs upon satisfaction of the mortgage. Initially, we note that the term "dissolution" could fairly refer to either dissolution of plaintiff as a limited dividend housing association or dissolution of plaintiff as a limited partnership. Because the term "dissolution" is ambiguous, judicial construction is required. *Ypsilanti, supra* at 624-625.

We note that, like MCL 125.1493(b), a Wisconsin statutory scheme provided that "upon dissolution of the limited-profit entity any surplus in excess of the distributions allowed by this section shall be paid to the authority [Wisconsin Housing and Economic Development Authority]." *Wisconsin Housing & Econ Dev Auth v Bay Shore Apartments*, 546 NW2d 480, 482 (Wis App, 1996). In *Bay Shore*, two limited dividend entities, both of which were limited partnerships, questioned whether satisfaction of the mortgage constituted a "dissolution." *Id.* at 482, 484. The entities contended that dissolution required something more than merely paying off the mortgage, such as the entities dissolving as partnerships while indebted to the Wisconsin Housing and Economic Development Authority (WHEDA). *Id.* at 484. The WHEDA, in turn, contended that dissolution referred to the dissolution of the entities *as limited-profit enti-*

*ties* by satisfying the respective mortgages, and not dissolution of the entities as *limited partnerships. Id.* at 484.

The *Bay Shore* court noted that a partnership "can be dissolved wholly on the happening of a fortuitous event," such as a partner's incapacity. *Bay Shore, supra* at 486. The court considered it "absurd" that the phrase "dissolution" would mean dissolution of the type of organization the limited-profit entity chose (rather than dissolution of the entity status as a limited-profit entity). *Id.* at 485-486. The court further noted that the term "limited-profit entity" only had meaning with reference to the WHEDA loan; therefore, the court concluded that the Wisconsin legislature intended that a "dissolution" occurred when a limited-profit entity satisfied the WHEDA loan. *Id.* at 486.

Although the *Bay Shore* decision is not binding, we find it instructive. Both the WHEDA and the MSHDA were created to provide affordable housing for low- and moderate-income families. See MCL 125.1401; MCL 125.1493(b); *Bay Shore, supra* at 487. The statutory schemes that created the WHEDA and the MSHDA allow certain entities to receive a low interest mortgage loan and various tax incentives in exchange for accepting a limited annual return on the entity's members' initial investments. MCL 125.1493(b); *Bay Shore, supra* at 487-488. The respective statutory schemes also provide for the WHEDA and the MSHDA to retain any "surplus" upon the dissolution of these entities. MCL 125.1493(b); *Bay Shore, supra* at 487-488.

Here, there is no question that plaintiff, as a limited partnership, could continue to exist after satisfying the mortgage. Conversely, the limited partnership could cease to exist before satisfying the mortgage. For example, if plaintiff were to be restructured (pre-

sumably with defendant's permission) into a general partnership or another approved entity, defendant would be authorized by MCL 125.1493(b) to retain any surplus—simply because the limited partnership was dissolved as part of the restructuring. Alternatively, as the *Bay Shore* court noted, plaintiff could dissolve as a limited partnership on the basis of a fortuitous event. Like the *Bay Shore* court, we find such a result to be absurd.

The better interpretation of the statutory language is to interpret "dissolution" in its statutory context. Indeed, while a limited partnership can exist in many contexts, a limited-divided housing association exists only in the context of receiving a loan from defendant. In fact, the regulatory agreement indicates that defendant's restrictions on plaintiff only apply as (i) preconditions to the loan being made and (ii) continuing obligations during the loan repayment period.[2] Thus, once the loan is repaid, plaintiff's obligation to restrict its members' annual dividends would be lifted. At that point, although plaintiff would still be a limited partnership, it would certainly not be an entity receiving limited investment dividends. Accordingly, plaintiff would no longer be a *limited dividend* entity, such as a limited dividend housing association.

Because the parties' relationship is so intertwined with the status of loan, we conclude that the term "dissolution" refers to this relationship, and not to plaintiff's status as an entity outside the loan. Thus, we resolve the aforementioned statutory ambiguity by concluding that a limited dividend housing association dissolves when it satisfies its mortgage obligation

---

[2] Whether defendant does, in fact, retain any control over plaintiff after the mortgage is satisfied is beyond the scope of this appeal.

to defendant. Therefore, we reject plaintiff's contention of error.

Plaintiff also contends that, even if the Court of Claims did not err in its construction of the word "dissolution," it nevertheless erred in granting defendant's motion for summary disposition because the accounts in question are not "surplus," as used in MCL 125.1493(b). The Court of Claims did not directly address this issue.

We note that MCL 125.1493(b) mandates that members of a limited divided partnership association agree to receive only a limited return on investment. In fact, the statute states that "at no time" shall a member receive anything beyond the member's initial investment and the limited dividend. By stating in the next phrase that defendant would receive any surplus, the statutory language certainly suggests that the members of a limited dividend partnership would never receive anything beyond their initial investments and the allowable annual dividends. If so, read in its statutory context, everything else, regardless of when received, would be "surplus."

It should be noted that, unlike the term "dissolution," our Legislature eventually defined the term "surplus" as follows:

As used in this chapter, the term "surplus" shall not be deemed to include any increase in assets of any limited dividend housing association organized in accordance with the provisions of this chapter, by reason of reduction of mortgage, by amortization or similar payments or realized from the sale or disposition of any assets of a limited dividend housing association to the extent such surplus can be attributed to any increase in market value of any real property or tangible personal property accruing during the

> period the assets were owned and held by the limited dividend housing association. [MCL 125.1494.]

Thus, surplus does not include an increase in assets due to making mortgage payments, appreciation, and selling assets. By adding this statutory language, our Legislature allowed the members of a limited dividend housing association to receive, in addition to their annual dividend, the long-term benefits of owning the property.

Our Legislature's definition of surplus did not, however, exclude any of the accounts at issue in this appeal. The well-established rule of the statutory construction, expressio unius est exclusio alterius, recognizes that the expression of one thing suggests the exclusion of all others. See *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 712; 664 NW2d 193 (2003). Accordingly, we are not persuaded that the accounts at issue in the instant matter fall outside the statutory definition of "surplus," MCL 125.1494. We note that our ruling is consistent with the Attorney General's opinion referenced above. See OAG, 1989-1990, No 6590, p 157-162 (June 27, 1989) (opining that the MSHDA owns the residual receipts remaining after the dissolution of a limited dividend housing association and the payment of certain project expenses); see also *Bay Shore, supra* at 488 (allowing the WHEDA to retain the limited dividend entities' replacement reserves as part of the surplus). Consequently, we reject plaintiff's contention of error.[3]

In summary, we conclude that the Court of Claims did not err in granting defendant's motion for sum-

---

[3] In light of our ruling, we decline to consider plaintiff's issue challenging whether the Court of Claims should have made rulings beyond the questions presented to it.

mary disposition because (i) a limited dividend housing association dissolves upon satisfaction of an MSHDA mortgage and (ii) the MSHDA was statutorily authorized to retain the accounts at issue as "surplus," MCL 125.1493(b); MCL 125.1494.

Affirmed.