# STATE OF MICHIGAN

# COURT OF APPEALS

In re Estate of STEWART ELLSWORTH
HUMMER.

COLLEEN COVEY, as Personal Representative of
the Estate of STEWART ELLSWORTH
HUMMER,

      Appellant,

v

STEWART E. HUMMER, JR.,

      Appellee.

UNPUBLISHED
December 9, 2014

No. 317559
Lapeer Probate Court
LC No. 12-036887-DE

Before: BORRELLO, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

In this will dispute, appellant, Colleen Covey (respondent),[1] as personal representative of the estate of Stewart Ellsworth Hummer (the estate), appeals as of right a June 18, 2013 probate court order wherein the court held that respondent, in her personal capacity, owed the estate $40,109 for an unpaid loan and assessed a $6,400 surcharge upon respondent. For the reasons set forth in this opinion, we affirm.

This case arises out of a will contest between petitioner and respondent who are siblings. Respondent's previous marriage was annulled on April 3, 2008. As part of the judgment of annulment, respondent was required to reimburse Stewart Ellsworth Hummer, Sr., (decedent) an amount of $40,109 for a loan decedent made to respondent.

On March 31, 2011, decedent signed his last will and testament. The will provided that Dylan Covey, Alayna Covey, and Sara Covey, decedent's grandchildren and respondent's children (the grandchildren), would each receive $25,000 from decedent's estate. Respondent

---

[1] To maintain consistency with the lower court proceedings, we refer to Colleen Covey as "respondent" and Stewart E. Hummer, Jr., as "petitioner."

and petitioner were to split all of the estate's remaining assets. The will did not define all of the estate's assets. The will nominated respondent as the personal representative of decedent's estate, but if she were unable to act in that capacity, petitioner would take her place.

Decedent died testate on January 5, 2012. Respondent found decedent's will in his home the day after he died, and she gave it to her attorney to be submitted for informal probate on August 31, 2012.

Shortly after decedent's death, respondent began acting as a fiduciary and personal representative for decedent's estate. Respondent gave the grandchildren advances on their inheritances and she allowed Dylan, who had been residing with decedent prior to his death, to continue living in decedent's home rent-free. Dylan previously kept some belongings at decedent's home and once decedent died, Dylan moved into the home.

Respondent was formally appointed personal representative of decedent's estate on August 31, 2012. Throughout this time, petitioner sent numerous letters to respondent, both personally and through his attorney, requesting a detailed accounting of what she had done with decedent's assets. After respondent failed to respond to petitioner's letters, petitioner filed a petition for documentation, supervised administration, and an accounting of the estate on December 7, 2012. The parties appeared for a hearing on the petition on December 18, 2012. The probate court ultimately granted petitioner access to any and all bank records for accounts belonging to decedent and opened discovery on the matter.

On January 25, 2013, the parties appeared for respondent's deposition. Respondent testified that Dylan had been living in decedent's home since his death. Respondent also testified that she owed decedent $40,109 pursuant to the judgment of annulment. Further, respondent testified that, though she claimed decedent had "wip[ed] it [the loan] out," she had no documentation proving that the loan had been forgiven.

Petitioner filed a petition for determination of full distribution of specific funds, repayment of funds and collection of reasonable rent from Dylan. Petitioner argued that respondent distributed $25,000 to each of the grandchildren and the remainder of the estate should be split evenly between petitioner and respondent. Petitioner also argued that respondent admitted to owing decedent $40,109, and did not have any evidence to show that the loan was paid or otherwise discharged. Petitioner argued that respondent was required to repay the loan to the estate. Finally, petitioner argued that respondent failed to act as a fiduciary when she allowed Dylan to live rent-free in estate property.

The probate court held an evidentiary hearing to resolve the petition. Respondent testified that Dylan had been living in decedent's home since his death, but he had not made any improvements to the house and had not paid rent at any time during his stay. However, respondent stated that petitioner asked Dylan to move into decedent's home the day after decedent's death. Respondent further testified that her judgment of annulment included a debt to decedent in the amount of $40,109, but she had previously tried to pay decedent and he refused payment, though she had nothing in writing to show the loan had been satisfied or discharged.

Petitioner testified that he hired a lawyer after respondent refused to disclose anything about the estate and refused to share documents with him. Petitioner agreed that it was his idea to have Dylan live at decedent's house and pay utilities and he did not ask that Dylan pay rent "until I asked my sister one day . . . would you have a problem with me cutting wood" on the property. Specifically, petitioner explained that he previously cut firewood with decedent on decedent's property and he testified that decedent gave him a wood-splitter. After decedent passed away, petitioner asked respondent if he could cut firewood at decedent's property. Respondent refused to allow petitioner to cut firewood at the property unless he paid the estate for the wood. Respondent explained to petitioner that he could not cut firewood at the home because respondent needed to run the estate "like a corporation." After respondent refused to allow him to cut firewood on the property, petitioner agreed that he did not complain about not receiving rent from Dylan.

Following the hearing, the probate court found that respondent owed the estate $40,109. The court reasoned that respondent acknowledged the existence of the loan and, although respondent testified that decedent refused one payment toward the loan, this was insufficient to show that decedent forgave the debt. The court also assessed a surcharge against respondent for the amount of rent she could have collected from Dylan during the time he lived at decedent's home rent-free. However, the probate court discounted the monthly rent from the $700 per month rate to which the parties stipulated, to $400 per month, for a total surcharge of $6,400 for the period from January of 2012, to the date of the hearing. The probate court entered an order reflecting this ruling on June 18, 2013.

On June 27, 2013, respondent filed a motion to reopen proofs for testimony by decedent's attorney. Respondent argued that attorney Martin Hable interviewed decedent prior to drafting the will and would be able to testify regarding any outstanding debts decedent may have mentioned when he had Hable draft the will. On the same day, respondent also filed a motion for reconsideration. Respondent argued that the probate court ignored respondent's uncontradicted testimony that decedent forgave the loan and the court erred by reading into the will a provision requiring respondent to pay back a loan that was never referenced.

On July 19, 2013, the probate court denied respondent's motion for reconsideration. The court held that respondent did not meet her burden of showing palpable error by the court because respondent admitted the existence of the $40,109 loan from decedent and it did not matter whether the loan was expressly mentioned in the will. Following a hearing, the court also denied respondent's motion to reopen proofs. The court reasoned that, even accepting that Hable would testify that decedent did not mention any loan to respondent, the additional testimony would not affect the court's determination that the loan was outstanding.

Respondent argues that the probate court erred in ruling that she owed the estate $40,109. We review a probate court's factual findings for clear error. *In re Miller Osborne Perry Trust*, 299 Mich App 525, 529; 831 NW2d 251 (2013). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000).

In this case, the will provided that respondent and petitioner were each entitled to a 50-percent share of the estate's assets after the grandchildren each received gifts of $25,000. The will did not define the extent of the estate's assets. Though respondent's arguments on appeal center around whether the probate court's determination was an improper use of extrinsic evidence, the probate court's determination at issue on appeal is not related to the admission of extrinsic evidence in interpreting the will. The will plainly provided that petitioner and respondent were to evenly split decedent's estate after the distribution to the grandchildren. However, it was unclear what assets were included within the estate, particularly, whether respondent, in her individual capacity, owed the estate $40,109. In considering testimony about the loan, the probate court was not interpreting the will, but rather was attempting to define the extent of the estate's assets. This did not amount to error. MCL 700.3952(2) provides that an interested party may petition a probate court to compel an accounting and distribution. Petitioner filed a petition, for among other things, an accounting of the estate. The will did not specify the estate's assets. Thus, it was necessary for the probate court to hold an evidentiary hearing to determine the extent of the estate's assets.

Moreover, to the extent that respondent argues that the probate court erred with respect to its factual findings, having reviewed the record, we are not left with a definite and firm conviction that a mistake was made. *Walters*, 239 Mich App at 529. Here, respondent admitted that, pursuant to the order of annulment, she owed decedent $40,109 and she agreed that she had not repaid the loan. Respondent argues that the trial court erred in failing to consider her testimony that decedent forgave her debt. However, the court found that the only evidence supporting respondent's contention that the debt had been forgiven was her own self-serving testimony. The court was not required to find respondent credible simply because there was no conflicting testimony. Importantly, this Court "will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Estate of Erickson*, 202 Mich App 329, 331; 508 NW2d 181 (1993).

In sum, the probate court did not err in considering evidence that respondent owed the estate for an unpaid loan and the probate court's factual findings were not clearly erroneous.

Next, respondent argues that the probate court erred when it assessed a surcharge against her for Dylan's unpaid rent. Respondent contends that the court assessed rent charges against her for months prior to the time she was appointed personal representative of the estate.

A probate court's decision whether to impose a surcharge upon a personal representative is reviewed for an abuse of discretion. *In re Baldwin Trust*, 274 Mich App 387, 397; 733 NW2d 419 (2007). "The trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Estate of Temple*, 278 Mich App 122, 128; 748 NW2d 265 (2008).

MCL 700.3703(1) provides, in pertinent part:

A personal representative is a fiduciary who shall observe the standard of care applicable to a trustee as described by section 7803. A personal

-4-

representative is under a duty to settle and distribute the decedent's estate in accordance with the terms of a probated and effective will and this act, and as expeditiously and efficiently as is consistent with the best interests of the estate.

MCL 700.1212 sets forth certain requirements of all fiduciaries:

> A fiduciary stands in a position of confidence and trust with respect to each heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary. A fiduciary shall observe the standard of care described in section 7803 and shall discharge all of the duties and obligations of a confidential and fiduciary relationship, including the duties of undivided loyalty; impartiality between heirs, devisees, and beneficiaries; care and prudence in actions; and segregation of assets held in the fiduciary capacity.

MCL 700.7803 provides that a personal representative "shall act as would a prudent person in dealing with the property of another, including following the standards of the Michigan prudent investor rule."

"A personal representative's duties and powers commence upon appointment. A personal representative's powers relate back in time to give acts by the person appointed that are beneficial to the estate occurring before appointment the same effect as those occurring after appointment." MCL 700.3701. Therefore, an interested party's acts on behalf of the estate should be "given the same effect as if, at the time, [the interested party] was the decedent's personal representative." *Tice Estate v Tice*, 288 Mich App 665, 671; 795 NW2d 604 (2010). In the event that a personal representative breaches a fiduciary duty, MCL 700.1308(1)(c) provides that a court may assess monetary penalties upon the fiduciary.

Respondent began acting in a fiduciary capacity for the estate the day after decedent died when decedent's family discovered his will. The will appointed respondent as personal representative of the estate. Although respondent was not formally appointed personal representative of the estate until August 31, 2012, her actions beforehand allowing Dylan to live in the estate's property, i.e., decedent's home, without paying rent violated her fiduciary duty. Evidence at the hearing showed that respondent informed petitioner that she was required to run the estate "like a corporation," and she refused to allow petitioner to cut firewood on decedent's property without reimbursing the estate. Yet, at the same time, respondent allowed Dylan, her son, to live rent-free at decedent's home. In doing so, respondent was not acting in the best interests of the estate and all of the beneficiaries and instead was favoring one beneficiary, Dylan, over another, petitioner. In doing so, respondent breached her fiduciary duties. See MCL 700.1212(1) (in discharging her duties, a fiduciary must show "impartiality between heirs, devisees, and beneficiaries. . . .") Accordingly, the probate court did not abuse its discretion in assessing the surcharge. MCL 700.1308(1)(c).

Affirmed.  Appellee having prevailed, may tax costs.  MCR 7.219(A).  We do not retain jurisdiction.


/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens