*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WALTER WENDLING, LINDA WENDLING, BRIAN WENDLING, ROBIN WENDLING, BRAD WENDLING, LINDA ANN WENDLING TRUST, KEITH KRENTZ, and JUSTINE KRENTZ,

Plaintiffs/Counterdefendants-Appellees,

v

WILDCAT CLUB,

Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
April 16, 2019

No. 342382
Alcona Circuit Court
LC No. 15-002555-CH

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Defendant, the Wildcat Club,[1] appeals as of right the trial court's order, entered following a bench trial, quieting title to a disputed strip of land in plaintiffs' favor. The Club claims that the trial court's finding that it acquiesced to the location of the disputed boundary line was against the great weight of the evidence. We affirm.

## I. FACTS

Plaintiffs own adjoining parcels of land that comprise a portion of the northern border of the Club's 960-acre parcel in Alcona County. From east to west, plaintiffs' four properties consist of the east and west Krentz parcels, owned by Keith and Justine Krentz, the Wendling

---

[1] The Wildcat Club is a large parcel of land that club members use for hunting and other activities.

parcel, owned by Walter,[2] Linda, Brian, Robin, and Brad Wendling, and the Linda Ann Wendling Trust parcel. A wire runs east and west between the parcels and it varies from the true property line by approximately 38 to 94 feet to the south of the boundary line. The disputed strip of land is the approximately seven-acre area between the wire and the true property line, bordering plaintiffs' and defendant's properties. Plaintiffs brought an action to quiet title to the disputed strip of property on the theories of adverse possession and acquiescence. Defendant brought a counterclaim to quiet title and for trespass, seeking damages and injunctive relief.

At the bench trial, plaintiffs Keith Krentz and Linda, Brian, and Brad Wendling testified concerning the existence of the wire at the southern edge of their respective properties and their understanding that it represented the property line. Hans Langschwager, as an agent of the Club, testified that the wire was a "guide" to warn club members and visitors that they were nearing the boundaries of the Club. He established that there are survey markers at the corner of each of plaintiffs' parcels, which are north of the wire line. According to both Langschwager and Davy Beaudoin, a Club member, they knew the wire was not the true property line and had used the disputed area for activities including hunting small game and four wheeling. Langschwager and Beaudoin also testified that there were similar wires on the eastern, western, and southern borders of the Club's property and that they were close to the surveyed property line.

Brian, Brad, and Linda Wendling testified that a club member named Gene Montley restrung a new wire in the same place as the old wire in the 1997. According to Beaudoin, who assisted Montley in stringing the new wire, Montley showed him how many feet the wire was from where the true property line should have been. Langschwager testified that although Montley was a member of the Club, the Club did not give him authority to string the new wire.

The Club presented evidence of two surveys conducted in the area. In 1978, Duane MacNeill surveyed both of the Krentz parcels and the Wendling parcel. This survey was recorded and there are markers at the corners of the parcels. In 1997, Wade-Trim conducted a survey of the area, but it was not recorded. Both surveys placed the property line in approximately the same location and the parties do not dispute that location. The Wade-Trim survey also noted the location of the wire fence.

Additionally, the parties testified regarding plaintiffs' activities in the disputed area. The Wendlings' properties were clearcut in the area north of the wire on two occasions. The Wendling Trust property was clearcut to the wire when the Wendlings purchased it in 1990. Langschwager testified that he discovered this between 1991 and 1993 and the Club decided not to pursue legal remedies. The Wendling parcel was clearcut in 2006 or 2007 "right up to the wire." Langschwager testified that he talked to Walter Wendling about this and stated: "For God's sake, Walt. Get a survey. So we know. This dispute's going to bubble into something someday." Plaintiffs also testified that the Wendlings put trails around the perimeter of both of their parcels. On the southern side of each parcel, the trail was in the disputed area and was within two to three feet of the wire in some areas. When Langschwager found out about the trails he called the Wendlings and told "them what [he] thought."

---

[2] Walter Wendling died during the course of the proceedings.

Finally, there were at least two disputes between the parties before this litigation commenced. Beginning in November 1997, the Club, plaintiffs, and their predecessors exchanged a number of letters regarding the placement of a proposed gas well and an access road in the disputed area. Both parties asserted ownership of the land, and ultimately no wells were placed in the area. In 2013, Krentz was hunting in the area when Langschwager killed a deer that was north of the wire. Langschwager gave the deer to Krentz and according to Krentz, he said, "I have no problem with you keeping the deer. I shot it on your land." Langschwager testified that Krentz was on the Club's property, but Langschwager "wasn't willing to perjure [himself] and cross over onto his property," so he let him keep the deer. Langschwager later sent a letter to Krentz regarding this altercation and attached the 1997 Wade-Trim survey to the letter.

Following the bench trial, the trial court found that plaintiffs failed to satisfy the elements of adverse possession, but they had demonstrated that defendant acquiesced to the disputed boundary line for the statutory period. The trial court based its finding on the length of time that the wire had existed and the proximity of similar wires to the property line on the three other boundaries of the Club's property. The trial court found that Langschwager's testimony that the wire was only intended as a guide was not credible. Additionally, the trial court considered the Club's failure to take action against plaintiffs' use of the disputed land after a survey demarcated the boundary line in 1997. Therefore, the trial court quieted title in favor of plaintiffs. Defendant appeals this ruling.

## II. STANDARD OF REVIEW

"We review de novo actions to quiet title, as well as a trial court's conclusions of law following a bench trial. We review for clear error a trial court's findings of fact during a bench trial." *Waisanen v Superior Twp*, 305 Mich App 719, 723; 854 NW2d 213 (2014) (citations omitted). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000) *(Walters II)*.

"Determining whether a verdict is against the great weight of the evidence requires review of the whole body of proofs. . . . [I]f there is conflicting evidence, the question of credibility ordinarily should be left for the fact-finder." *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010).

## III. ANALYSIS

Defendant argues that the trial court's finding that it acquiesced to the location of the disputed boundary line since 1997 was against the great weight of the evidence. We disagree.

This Court has identified three theories of acquiescence to a disputed property line: "(1) acquiescence for the statutory period, (2) acquiescence following a dispute and agreement, and (3) acquiescence arising from intention to deed to a marked boundary." *Walters II*, 239 Mich App at 457. In this case, plaintiffs brought an action to quiet title to the disputed strip of property under the theory of acquiescence to the boundary line for the statutory period. The Revised Judicature Act of 1961 (RJA), MCL 600.101 *et seq.*, provides that the limitations period

for bringing an action to quiet title is 15 years. MCL 600.5801(4). Accordingly, an action to quiet title under the theory of acquiescence "requires merely a showing that the parties acquiesced in the line and treated the line as the boundary for" 15 years. *Walters II*, 239 Mich at 456 (quotation marks and citation omitted). Therefore, "where adjoining property owners acquiesce to a boundary line for a period of at least fifteen years, that line becomes the actual boundary line." *West Mich Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995). Plaintiffs alleged that defendant treated the fence line as the boundary line for more than 15 years and failed to bring an action to prevent plaintiffs' use of the disputed area during that time. Thereby, plaintiffs argue, they acquired title to the disputed strip of land by defendant's acquiescence.

The doctrine of acquiescence frequently applies "where adjoining property owners mistakenly treat a boundary line, typically a fence, as the property line." *Walters II*, 239 Mich App at 458 (quotation marks, alterations, and citation omitted). The party who asserts that the disputed boundary should become the true property line bears the burden of proving by a preponderance of the evidence that the opposing party acquiesced to the disputed boundary. *Walters v Snyder*, 225 Mich App 219, 223; 570 NW2d 301 (1997) *(Walters I)*. While there is not an explicit set of elements necessary to establish acquiescence, the key inquiry is "whether the evidence presented establishes that the parties treated a particular boundary line as the property line." *Walters II*, 239 Mich App at 457, 458.

In *Killips v Mannisto*, 244 Mich App 256, 258; 624 NW2d 224 (2001), this Court considered a dispute over a portion of land that was used as the plaintiffs' driveway but was titled in the defendant's name. The defendant did nothing to stop the plaintiffs from using the land, "despite her belief that the original easement had terminated," and although the defendant used survey stakes to mark the actual boundary, the "stakes did not . . . interfere with [the] plaintiffs' use" of the driveway and the plaintiffs undertook maintenance of the disputed area. *Id*. at 260, 261. Because the "defendant did nothing to stop [the] plaintiffs . . . from using the driveway," this Court concluded that the trial court did not err when it found that the plaintiffs had obtained the property by acquiescence. *Id*.

In this case, the Club similarly took no action to prevent plaintiffs from using the disputed strip of land. Langschwager testified that he first knew of the wire "50 years ago" and Keith Krentz stated that the wire was in place "in the late '80's." The record demonstrates that since 1990, plaintiffs maintained the area between the survey line and the wire on each of their respective parcels and hung the wire back up when it came down. The Club established that there are survey stakes marking the property line along the northern edge of its parcel, which are north of the wire. However, it is clear that these markers did not interfere with plaintiffs' use of the land. In the early 1990s, plaintiffs clearcut their parcels up to the wire, and they clearcut the area again in 2006 or 2007. The Wendlings put trails in the disputed area on both of their parcels in 2007, and Brian Wendling testified that there was a trail on the southern side of the wire that had existed for 25 years. Langschwager testified that he did not do anything about these instances other than calling "them up and [telling] them what [he] thought . . . ." He further testified that the Club decided not to pursue any legal remedies after he discovered that plaintiffs had clearcut up to the wire. In 1997, the survey by Wade-Trim established the true boundary line, and in the same year, a Club member strung a new wire in the same place as the old one.

As the trial court found, the Club "made an affirmative decision to do nothing, [and continued] to allow the [p]laintiffs to occupy and use the property north of the fence line."

In *Walters I* and *II*, this Court considered the defendant's claim that the plaintiff had acquiesced to an apparent boundary marked "by a line of bushes and small trees" between the properties that did not correspond to the platted boundary line. *Walters I*, 225 Mich App at 220-221. The defendant demonstrated that the parties "treated the bush line as the approximate property line," because the defendant and his predecessors consistently mowed the grass up to, and stacked firewood next to, the bushes, even though the bushes were beyond the true property line. *Walters II*, 239 Mich App at 458 (quotation marks omitted). Additionally, "improvements of some cost were made on the disputed property . . . ." *Id*. at 459. The plaintiff "testified that he believed the bush line approximated the property line" and he was "surprise[d] when made aware that the true boundary line was actually twelve feet south of the bush line . . . ." *Id*. at 459-460.

This case differs from *Walters I* and *II* because the Club and at least some of its members were aware that the wire was not the surveyed boundary line. As Langschwager testified, he understood the wire to serve as a "guide" to warn members that they were close to the edge of the property. However, the trial court found testimony that Montley strung a new wire in 1997 in the same place as the old wire "for the purpose of only establishing a guide wire [was] not credible, especially in light of the fact that all other wires surrounding the Wildcat Club on the east, west, and south are on the actual boundary." *Walters II* emphasizes that the key inquiry is whether the parties treated the wire as the boundary line. *Walters II*, 239 Mich App at 458. As in *Walters II*, *id*. at 459, plaintiffs treated the disputed area as their own since 1990, by making improvements including clearcutting and building trails in the area. While the Club and its members also used the disputed strip of land for hunting small game and four wheeling, they treated the area as belonging to the plaintiffs when, sometime between 1991 and 1993, the Club declined to take any legal action to eject plaintiffs after discovering plaintiffs' activities on the land.

In sum, leaving questions of credibility to the trial court as fact-finder, plaintiffs demonstrated that they and the Club treated the wire as the property line. Plaintiffs established the 15-year limitations period because they demonstrated that they clearcut the area in 1990, defendant declined to pursue legal action when it discovered the clearcutting between 1991 and 1993, and defendant strung a new wire in the same place as the old wire in 1997. Therefore, the trial court did not err when it found by a preponderance of the evidence that the Club had acquiesced to the wire being the boundary line since 1997.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron