*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOEL MOROCCO,

Plaintiff-Appellee,

v

ROBERT VANDENBERG and DOLORES
VANDENBERG,

Defendants-Appellants.

UNPUBLISHED
July 28, 2022

No. 358648
Lapeer Circuit Court
LC No. 20-053975-CH

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Plaintiff, Joel Morocco, and defendants, Robert and Dolores Vandenberg, dispute the boundary lines separating their neighboring properties in Lapeer County. According to Morocco, the centerline of a drain and an old fence line provide the boundary lines separating his property to the west from the Vandenbergs' property to the east. The legal descriptions in the parties' deeds, however, provide that the disputed area of land is titled to the Vandenbergs.

Morocco brought this action to quiet title in real property, seeking to establish that his predecessors in interest acquired the disputed area of land through acquiescence for the 15-year statutory period. The trial court granted summary disposition in Morocco's favor, finding uncontroverted evidence that the parties' predecessors in interest treated the drain and fence line as the true boundary lines between the properties for at least 15 years. Accordingly, the trial court found that Morocco established legal entitlement to the disputed area of land through acquiescence. We conclude that the Vandenbergs failed to present evidence that their predecessors in interest did not acquiescence in the boundary lines claimed by Morocco and agree with the trial court that they therefore failed to demonstrate a question of material fact. Thus, summary disposition was proper, and we affirm.

## I. FACTUAL BACKGROUND

In 2015, a land survey demonstrated that a portion of property Morocco had been claiming as his own was actually titled to the Vandenbergs (the disputed area of land). Morocco eventually brought suit to quiet title to the disputed area of land, arguing entitlement to the land based on

acquiescence and adverse possession. He also sought a preliminary injunction to maintain the status quo as to the disputed area of land and to prevent the Vandenbergs from limiting Morocco's access to the land. The trial court granted the preliminary injunction.

Following discovery, Morocco moved for summary disposition under MCR 2.116(C)(10), which the Vandenbergs opposed. Relying primarily on the deposition of Morocco's mother, Joyce, the trial court found that, beginning in 1969 at the latest, the parties' predecessors in interest treated the center of a drainage ditch (the Madison Drain) and an old fence line as the properties' boundaries lines—in contrast to the deeded property lines. Accordingly, the trial court determined that Morocco's predecessors in interest acquired title to the disputed area of land through acquiescence in 1984, decades before this action began. The trial court granted Morocco's motion for summary disposition and quieted title to the disputed area of land. The Vandenbergs moved for reconsideration, which the trial court denied. This appeal as of right followed.[1]

## II. ACQUIESCENCE

The Vandenbergs argue that the trial court improperly granted summary disposition to Morocco because the evidence did not establish the parties treated any boundary line as a true property line. The Vandenbergs contend that the parties' respective use of the disputed area shows a lack of agreement as to any acquiesced boundary line, thereby establishing a material question of fact that should have precluded summary disposition.

We review de novo a trial court's decision on a motion for summary disposition, as well as a trial court's equitable rulings on actions to quiet title. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). A trial court may only grant summary disposition under MCR 2.116(C)(10) if, considering all evidence submitted by the parties in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Houston*, 335 Mich App at 557. "A genuine issue of material fact exists when the record . . . leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

"Under Michigan law, parties may acquiesce to a new property boundary line" that is distinct from the titled property line. *Id*. at 567. "The law of acquiescence is concerned with a specific application of the statute of limitations to cases of adjoining property owners who are mistaken about where the line between their property is." *Kipka v Fountain*, 198 Mich App 435, 438; 499 NW2d 363 (1993). Generally, the statute of limitations for an action for the recovery or possession of land is 15 years after the cause of action first accrues. MCL 600.5801(4). Acquiescence for a statutory period, one of the three theories of acquiescence,[2] is therefore met

---

[1] The trial court did not address the claim of adverse possession, and the parties have not raised it on appeal. Therefore, we focus exclusively on the claim of acquiescence.

[2] The three theories of acquiescence are "(1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to

-2-

"when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line" for the 15-year statutory period. *Houston*, 335 Mich App at 567-568 (quotation marks and citation omitted).

> Adjoining property owners may treat a boundary line, typically a fence, as the property line. If the boundary line is not the recorded property line, this results in one property owner possessing what is actually the other property owner's land. Regardless of the innocent nature of this mistake, the property owner whose land is being possessed by another would have a cause of action against the other property owner to recover possession of the land. After fifteen years, the period for bringing an action would expire. The result is that the property owner of record would no longer be able to enforce his title, and the other property owner would have title by virtue of his possession of the land. [*Kipka*, 198 Mich App at 438-439.]

"The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). And proof of privity is unnecessary "to employ tacking of holdings to obtain the 15-year minimum under the doctrine of acquiescence." *Siegel v Renkiewicz Estate*, 373 Mich 421, 426; 129 NW2d 876 (1964). "Our Supreme Court has repeatedly held that a boundary line long acquiesced in and treated as the true line should not be disturbed on the basis of new surveys." *Houston*, 335 Mich App at 568.

Further, there is no "explicit set of elements necessary to satisfy the doctrine of acquiescence." *Walters v Snyder*, 239 Mich App 453, 457; 608 NW2d 97 (2000). For instance, a claim of acquiescence does not require that the possession be hostile for the statutory period, as is required under the doctrine of adverse possession. *Houston*, 335 Mich App at 568. Nor does the doctrine of acquiescence require that there was "a bona fide controversy regarding the boundary." *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (1996). But a party seeking to obtain title to property by acquiescence does need to establish that "there has been some agreement, whether tacit or overt, as to the location of the boundary." *Houston*, 335 Mich App at 568 (quotation marks and citation omitted). Courts may infer an agreement as to a settled boundary from the parties' conduct or from surrounding circumstances. *Id*. at 570. Ultimately, proving a claim of acquiescence for the statutory period merely requires that the evidence establish "that the parties *treated* a particular boundary line as the property line" for 15 years. *Id*. at 567 (quotation marks and citation omitted; emphasis added).

The evidence presented by the parties established the following facts. Morocco's parents, Henry and Joyce Morocco, acquired three parcels of land in the 1960s: one from Henry's father and two from unrelated property owners. They purchased the final parcel in May 1969 and exclusively began farming the land after acquisition. The parcels abutted land to the east owned by the Szabo family, and the two families considered the following as the boundary lines between

---

deed to a marked boundary." *Houston*, 335 Mich App at 567 (quotation marks and citation omitted).

the properties: the center of the Madison Drain as to Parcel 1, and an old fence line as to Parcels 2 and 3. The two families treated these as the boundary lines at least until 1993 to 1994, at which time Morocco acquired Parcels 1 through 3 from his parents, and the Vandenbergs acquired the adjacent property from the Szabos. Morocco and the Vandenbergs then continued to use the properties in the same manner as their predecessors in interest;[3] Morocco continued farming up to the established boundary line and the Vandenbergs largely remained out of the disputed area of land, aside from harvesting firewood just west of the Madison Drain. Robert Vandenberg claimed that his predecessors in interest informed him a survey marker to the west of the boundary line marked the true property line, but he presented no evidence that the parties ever *treated* this purported marker as the actual boundary line. In 2015, a land survey proved the actual titled property line sat further west than the established boundary line, meaning the disputed area of land was legally titled to the Vandenbergs.

Given the foregoing, the trial court properly granted summary disposition to Morocco because Morocco acquired legal title to the disputed area of land from his predecessors in interest. Morocco's predecessors in interest obtained the third parcel of land by 1969, at which time both parties' predecessors in interest began to treat the property boundary lines as the center of the Madison Drain and the old fence line. It is unclear whether either parties' predecessors in interest were aware the legal property line was different from the line they treated as the boundary line, but knowledge of the legal property line is irrelevant to a claim of acquiescence. By definition, land acquired by acquiescence is excluded from the legal title. See *Kipka*, 198 Mich App at 438.

The deposition of Morocco's mother established that the Vandenbergs' predecessors in interest either expressly agreed to treat the drain and the fence line as the true boundaries or implicitly agreed to such by refraining from entering or using the land on the Morocco side of the agreed-upon line.[4] Morocco's mother testified that this continued at least until she and her husband deeded the three parcels to Morocco in 1993 and 1994. The adjacent landowners at the time, the Szabos, took no action to eject the Moroccos from the disputed area of land during the 15 years that the Szabos had the right to do so. See MCL 600.5801(4) (providing the 15-year statute of limitations). Because the Vandenbergs presented no evidence to contradict the agreement between their predecessors in interest and Morocco's predecessors in interest, the evidence demonstrated that Morocco's predecessors in interest acquired legal title to the disputed area of land through acquiescence by 1984. Morocco therefore inherited the disputed area of land as part of the property that his parents deeded to him. See *Houston*, 335 Mich App at 568 (explaining long-acquiesced boundary lines should not be disturbed, even on the basis of subsequent land surveys).

The Vandenbergs argue that Morocco cannot prove acquiescence because his deeds did not include the disputed area of land. But this argument contradicts the entire purpose of the

---

[3] Neither party disputes that the previous owners of the respective parcels of land were the parties' respective predecessors in interest.

[4] The Vandenbergs argue that there is no evidence any such fence line served as the boundary between the properties. But in Robert Vandenberg's deposition, he acknowledged that he was aware of, and had seen remnants of, the old fence. And the land survey commissioned by Morocco references the remnants of the old wire fence between the properties.

doctrine of acquiescence: to allow a landowner to claim legal title to property they did not legally own but treated as their own for over 15 years. Again, because land acquired by acquiescence is inherently excluded from the legal title, it is irrelevant that Morocco's deeds to the three parcels did not reference the disputed area of land. If Morocco's legally titled deeds had included the disputed area of land, he would have had no reason to bring an action to quiet title based on acquiescence.

The Vandenbergs also contend that Morocco's failure to object to a 2008 classification of property lines by the United States Department of Agriculture (USDA)—which reflected the legal boundary line as lying west of the acquiesced boundary line—undermines Morocco's claim of acquiescence. This argument is unpersuasive because a landowner need not take any specific action to protect land acquired through acquiescence after the statutory period has passed. See *Walters*, 239 Mich App at 457. Morocco thus had no obligation to correct the USDA's assessment of the property lines, especially because this assessment of property lines had no legal effect on the properties.

The Vandenbergs finally argue that Morocco had not acquired the disputed area of land through acquiescence because the Vandenbergs never made any agreement with Morocco as to the boundary line between the properties. Whether the *present* parties made an agreement is irrelevant to whether Morocco held legal title to the disputed area of land. Morocco's predecessors in interest obtained title to the disputed area of land roughly a decade before the Vandenbergs even purchased the adjacent property, meaning the Vandenbergs never had any legal claim to the disputed area of land. See *Houston*, 335 Mich App at 567-568, 570 (explaining acquiescence is proven when the parties expressly or implicitly treat a certain boundary line as the property line for at least 15 years).

The trial court correctly concluded that the Vandenbergs had not established a question of fact concerning whether their predecessors in interest had acquiesced in the boundary lines claimed by Morocco for a period greater than 15 years. Consequently, the trial court properly granted summary disposition to Morocco because his predecessors in interest obtained title to the disputed area of land under the doctrine of acquiescence.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett

-5-