*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORTHEAST COMANCHE TRIBE, INC.,

        Plaintiff-Appellant,

v

INTERNATIONAL COMANCHE SOCIETY,

        Defendant-Appellee.

UNPUBLISHED
May 13, 2021

No. 352490
Grand Traverse Circuit Court
LC No. 2019-034836-CZ

Before: SAWYER, P.J., and STEPHENS and RICK, JJ.

PER CURIAM.

In this action for declaratory and injunctive relief, plaintiff appeals the circuit court's order dismissing its complaint with prejudice for failing to comply with a stipulated order. We affirm.

## I. UNDERLYING FACTS

This case involves a dispute over who is the legitimate governing board of plaintiff, the Northeast Comanche Tribe, Inc. (NE Tribe), an organization whose members own and fly Comanche airplanes.[1] The NE Tribe is affiliated with defendant, the International Comanche Society, whose purposes, according to its articles of incorporation, include to "enable Comanche pilots to meet and become better acquainted." The NE Tribe is a regional branch of the ICS membership.

In 2014, the NE Tribe members elected C.J. Stumpf its Tribe Chief, and, from 2014 to 2018, Stumpf and the other elected officers served as the Tribe's governing board. In 2018, NE Tribe member Av Shiloh began questioning the Tribe's election process. Shiloh maintained that the NE Tribe had not held proper annual member voting elections since 2015, and that its officers, including Stumpf, had held their offices for more than two consecutive years in violation of the

---

[1] The Comanche is a popular line of light aircraft that Piper Aircraft Corporation manufactured from 1958 to 1972.

NE Tribe's bylaws. Shiloh referred to provisions of a set of bylaws that had been posted on the NE Tribe's website, but were removed in or near October 2017.[2]

However, Stumpf maintained that she and her fellow officers had been reelected in duly conducted annual elections held from 2015 through 2018, and that an election was set to be held in August 2019. She further denied that the bylaws put forward by Shiloh were those of the NE Tribe. Stumpf maintained that the NE Tribe never adopted bylaws and was governed under the corporate law of its state of incorporation, Kansas. According to Stumpf, none of the NE Tribe members she surveyed, whose membership dated back to the Tribe's 1992 incorporation, had any recollection of the NE Tribe's ever adopting any bylaws, and her "thorough review" of the Tribe's meeting minutes and other records reflected that the Tribe had never done so.

Shiloh raised the issue with ICS leadership, whose investigation found no evidence of any NE Tribe elections since 2015. This placed the legitimacy of the Tribe's officers, including Chief Stumpf, in question.

On February 2, 2019, the ICS Board revoked Stumpf's membership, citing her involvement in disseminating misleading and false information on a website, social media posts, and in e-mails, along with the lack of elections for the NE Tribe's officers in recent years, and Stumpf's insistence that the Tribe did not have bylaws. According to the ICS, the revocation of Stumpf's membership left the NE Tribe without a Tribe Chief. On February 18, 2019, the ICS Board contacted the NE Tribe's membership and called for nominees for an election of the Tribe's governing board to be conducted on the ICS's voting platform.

On March 8, 2019, plaintiff's counsel sent the ICS a written demand to cease and desist from interfering with the NE Tribe's internal affairs and governance. Stating that the ICS was proceeding under the mistaken premise that the NE Tribe was governed by bylaws, plaintiff demanded an immediate retraction of its call for the Tribe's election. The ICS ignored plaintiff's demand and proceeded with the NE Tribe's election, commencing member voting on March 11, 2019.

On March 22, 2019, plaintiff initiated this lawsuit seeking injunctive relief, "including enjoining and restraining the ICS from counting the subject election process," and a declaratory judgment that the results of the election commenced by the ICS "are null and void." Plaintiff also sought a temporary restraining order to stop the election on the grounds that the NE Tribe already had a duly elected governing board, including Tribe Chief Stumpf, that the ICS had no authority to conduct an election for the Tribe, and that the election was conducted on the basis of purported bylaws that the NE Tribe never adopted.

---

[2] Those provisions included, among others, Article IV, § G, providing that the NE Tribe is required to hold annual elections; Article IV, § A, providing that the term of office of an officer "shall be one (1) year and not more than two (2) consecutive years . . . ."

Meanwhile, on March 25, 2019, the voting of the NE Tribe's membership under the ICS's auspices ended. The votes were tallied, and the resulting slate of officers included Shiloh as Tribe Chief.

On April 8, 2019, the trial court heard and denied plaintiff's motion for a temporary restraining order. There, plaintiff again maintained that the purported bylaws were "bogus," and that no members of the NE Tribe recalled ever adopting any bylaws, nor did any meeting minutes exist indicating that the Tribe ever did so, while the ICS asserted otherwise and put forward the purported bylaws as applicable to the NE Tribe. The litigation proceeded to discovery.

In July 2019, Malcolm Dickinson, the putative incumbent Treasurer of the NE Tribe, discovered some bylaws-related documents in an envelope in a box that suggested that the NE Tribe had in fact adopted bylaws. Specifically, Dickinson found an April 1992 NE Tribe newsletter that stated, "A major item of business is the tribe's decision on incorporation as a membership non-profit corporation and the adoption of a set of bylaws," and that the business of the NE Tribe's 1992 annual meeting would include incorporation and bylaws. Embedded in the newsletter was a set of bylaws. Dickinson also found a July 28, 1992 report from the then Tribe Chief of the NE Tribe indicating that the Tribe voted to incorporate as a membership, nonprofit corporation in the State of Kansas, and adopted its first set of bylaws "which are patterned after that suggested by ICS." Dickinson also found a letter from a past NE Tribe treasurer, dated November 5, 1998, stating that a copy of the NE Tribe bylaws, as well as the ICS bylaws, had been forwarded to him. The 1998 letter questioned whether the current officers had been elected in compliance with the NE Tribe's bylaws, and referred to a requirement that there be an annual meeting of the Tribe membership for the purpose of electing officers. The purported bylaws the former treasurer quoted in his letter contain very similar language to that of the bylaws that the ICS put forward as those of NE Tribe. After discovering these documents, Dickinson sent an e-mail to Stumpf and the other putative officers of the NE Tribe, and to plaintiff's counsel, explaining that he had "opened a box" and found the historical records, and forwarding the documents to them. The putative officers, including Stumpf, were not persuaded that bylaws had actually been adopted.

Meanwhile, issues with discovery compliance arose, including plaintiff's failure to provide answers to the ICS's discovery requests and to cooperate with scheduling depositions, culminating in the ICS's July 23, 2019 motion to dismiss plaintiff's complaint for discovery violations, or, alternatively, to compel discovery. The parties resolved the issues by negotiating an agreement in the form of a stipulated order, which the trial court entered on August 13, 2019. The order included the following provisions:

> IT IS FURTHER STIPULATED, AGREED AND ORDERED that, on or before August 26, 2019, Plaintiff shall provide Defendant full and complete answers to discovery requests served on it by Defendant;
>
> IT IS FURTHER STIPULATED, AGREED AND ORDERED that persons Plaintiff claims to be its governing body, including CJ Stumpf, Pete Morse, Malcom Dickerson [sic], and Ron Ward, shall not hereafter access information from the ICS member directory (ie. email list, addresses ect. [sic]) or cause anyone to access the

ICS member directory (ie. email list, addresses ect. [sic]), or use information hereafter obtained from the ICS membership directory, directly or indirectly;

IT IS FURTHER STIPULATED, AGREED AND ORDERED that, in the event Plaintiff fails to strictly comply with any aspect of this Stipulated Order, then Plaintiff's Complaint, including all claims asserted against Defendant therein, shall be dismissed with prejudice[.]

According to the ICS, the purpose of the provision prohibiting Stumpf and the other putative officers from accessing and using information from the ICS's member directory was to prevent "Stumpf and other rogue members of the shadow Northeast Tribe from continuing to meddle in International Comanche Society (ICS) affairs by improperly accessing ICS membership directory/contact information and email blasting the ICS to badmouth the organization or any of it[s] members . . . ."

On August 28 and 29, 2019, a few days past the stipulated order's discovery deadline, plaintiff served, via mail, its answers to the ICS's interrogatories and requests for production. In its answers, plaintiff asserted that "[a]ll Nor'easters and records reviewed are totally silent on Northeast bylaws," and then detailed how several former officers, covering the past 25 years, variously did not recall ever adopting bylaws, asserted that there were no bylaws, or indicated that they had discussed creating bylaws but never took any official action. Plaintiff's answers never mentioned, and apparently did not produce, the documents Dickinson had discovered a month earlier suggesting that the NE Tribe had in fact adopted bylaws.

On October 29, 2019, Stumpf sent an e-mail to ICS members voicing her concerns with the current ICS leadership, and promoting the opposing candidates running for ICS offices.[3] The ICS maintained that Stumpf's e-mail directly violated the stipulated order prohibiting her from accessing or using information from the ICS member directory.

On November 18, 2019, the ICS, citing plaintiff's failure to provide timely or complete discovery responses, and also Stumpf's e-mail to ICS members, filed a motion to dismiss the complaint for violating the stipulated order. At Dickenson's November 21, 2019 deposition, plaintiff's counsel provided the ICS's counsel with the bylaws-related documents that Dickinson found, and Dickinson apparently confirmed that he found the documents in July 2019 and informed the other putative officers of them. The day after learning of these documents, the ICS filed a supplemental brief in support of its motion to dismiss, now asserting that plaintiff intentionally withheld the bylaws-related discovery in violation of the stipulated order requiring plaintiff to provide full and complete answers by August 26, 2019.

The trial court conducted a hearing and found that plaintiff's allegedly late disclosure of the bylaws-related discovery, as well as Stumpf's e-mail to ICS members, had violated the stipulated order. Pursuant to the parties' stipulation, the court entered an order dismissing

---

[3] Les Thomas, allegedly Stumpf's boyfriend who had also had his ICS membership revoked, sent a similar e-mail to ICS members.

-4-

plaintiff's complaint with prejudice. Following the court's denial of its motion for rehearing, plaintiff appealed.

## II. TIMELINESS OF MOTION TO DISMISS

Plaintiff first claims that the trial court erred in considering the ICS's motion to dismiss because it was not brought at least 21 days before the hearing as required for dispositive motions under MCR 2.116. We disagree.

We review de novo the application of court rules. *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015). However, because plaintiff raised this issue for the first time on appeal, it is not preserved for our review. See *Glasker-Davis v Auvenshine*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 345238, issued August 13, 2020); slip op at 3 (generally, an issue raised before the trial court and pursued on appeal is preserved, even if the trial court did not decide it). "Review of an unpreserved error is limited to determining whether a plain error occurred that affected substantial rights." *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008).

The ICS filed its motion to dismiss on November 18, 2019, seven days before the November 25, 2019 hearing, and thus the motion would have been untimely if brought under MCR 2.116, whose subrule (G)(1)(a)(i) states that a motion brought pursuant to that rule "must be filed and served at least 21 days before the time set for the hearing." But the ICS did not bring its motion under MCR 2.116.[4] Instead, the ICS invoked MCR 2.504(B)(1), which permits dismissal for failure to comply with a court order, and MCR 2.313(B)(2)(c), which permits dismissal as a sanction for failure to comply with a discovery order. Neither MCR 2.504 nor MCR 2.313 sets forth a specific time for filing and serving motions, and so MCR 2.119, which governs general motion practice, applies.

According to MCR 2.119(A)(1), "An application to the court for an order in a pending action must be done by motion." MCR 2.119(C) provides that, unless a different period is set by the court rules or by the court for good cause, a written motion must be filed and served at least seven days before the time set for the hearing. Because the ICS served and filed its motion to dismiss on November 18, 2019, seven days before the scheduled hearing on November 25, 2019, it complied with the applicable time requirements.

## III. CONSIDERATION OF SUPPLEMENTAL BRIEF

Plaintiff next claims that the ICS's supplemental brief was improperly filed, and thus, that the trial court erred in considering the novel argument raised therein—that plaintiff violated the stipulated order by failing to timely disclose the bylaws-related discovery. We disagree.

---

[4] MCR 2.116(B)(1) provides that "[a] party may move for dismissal of or judgment on all or part of a claim in accordance with this rule." MCR 2.116(C) provides the specific grounds on which such a motion may be based, none of which applies here.

Because plaintiff raised this issue for the first time in its motion for rehearing, it is not preserved for our review.[5] See *George v Allstate Ins Co*, 329 Mich App 448, 454; 942 NW2d 628 (2019). We thus review for plain error affecting substantial rights. *Rivette*, 278 Mich App at 328. "Plain error occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings." *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010).

MCR 2.119(C)(1)(b) provides the time for service of motions and responses, and generally requires a written motion and "any supporting brief" to be served at least seven days before the attendant motion hearing. Further, according to MCR 2.119(A)(2)(b), "Except as permitted by the court or as otherwise provided in these rules, no reply briefs, additional briefs, or supplemental briefs may be filed." Thus, under MCR 2.119(A)(2)(b), the trial court had discretion to permit the ICS to file a supplemental brief in support of its motion.

There is no indication in the record, nor does the ICS assert, that the ICS ever sought or received the trial court's permission to file its supplemental brief.[6] Nonetheless, it is apparent that the trial court accepted plaintiff's supplemental brief because the court inquired about, considered, and ultimately relied on the grounds asserted therein, as reason to dismiss the case.

We conclude that the trial court did not abuse its discretion in considering the supplemental brief. See *Kemerko Clawson, LLC v RXIV, Inc*, 269 Mich App 347, 350; 711 NW2d 801 (2005) (recognizing that a trial court has discretion to decline to entertain motions filed after a deadline set forth in a scheduling order). Significantly, the record reflects that the ICS could not have raised the issue regarding plaintiff's failure to disclose the bylaws-related discovery in its original motion to dismiss, filed on November 18, 2019, because the ICS first learned of such documents on November 21, 2019, when plaintiff's counsel provided them to ICS's counsel at Dickinson's deposition. The ICS then acted diligently by filing its supplemental brief the next day. Although the ICS apparently skirted its duty to obtain permission from the trial court to file its supplemental brief, there was no evidence of surprise tactics, or even dilatory or negligent conduct, on the part of the ICS in that regard. And, because the court was already considering the other alleged violations of the stipulated order raised in the motion to dismiss, its consideration of the newly discovered violation alleged in the supplemental brief promoted the efficient administration of justice. Further, plaintiff never requested a continuance. Moreover, the trial court afforded plaintiff's counsel, who was clearly knowledgeable on the issue, the opportunity to argue and

---

[5] We note that, in response to the trial court's concern that it had not seen plaintiff's response to the motion to dismiss, which was filed on the day of the hearing, plaintiff's counsel pointed out that the ICS filed its supplemental brief only three days before that hearing, providing counsel little opportunity to review it. But counsel did not argue, as plaintiff now does on appeal, that the trial court should not have considered the ICS's supplemental brief as untimely filed.

[6] Plaintiff also argues that the supplemental brief was untimely under MCR 2.119(C)(1)(b). But the latter generally governs the timing and service of motions and supporting briefs, and thus does not obviously apply to a supplemental brief that may be filed only with the court's permission under MCR 2.119(A)(2)(b).

respond to the issue at the hearing. On this record, we hold that the trial court's decision to consider the supplemental brief was not plain error. See *Duray Dev*, 288 Mich App at 150.

Further, plaintiff has not explained how the trial court's consideration of the supplemental brief, in the absence of a written response by plaintiff, resulted in outcome-determinative prejudice. See *id.* At the hearing, plaintiff's counsel explained that he had provided the documents to ICS's counsel at Dickinson's November 2019 deposition, months after the stipulated order's August 26, 2019 deadline for providing discovery answers, and that counsel, and the putative officers of the NE Tribe, learned of the bylaws-related documents months earlier, when Dickinson found them in July 2019.[7] Given this knowledge, plaintiff clearly was not unfairly surprised by the ICS's argument, and thus had the opportunity to consider and respond to the evidence at the hearing. See *Traxler v Ford Motor Co*, 227 Mich App 276, 288; 576 NW2d 398 (1998) (due process requires "notice of the nature of the proceedings" and "an opportunity to be heard in a meaningful time and manner," and the latter generally requires a hearing "to allow a party the chance to know and respond to the evidence") (quotation marks and citation omitted). Further, given plaintiff's confirmation of the factual circumstances attendant to the alleged discovery violation, it is not apparent, nor did plaintiff attempt to explain, how it could have responded any differently had the court adjourned the hearing to permit plaintiff additional time to file a written response. Moreover, it is evident that the trial court was keenly aware of the potential relevance of the discovery, because the central premise of plaintiff's case, as plaintiff had earlier argued, was its claim that the NE Tribe had never adopted any bylaws.

For these reasons, we reject this claim of error.

## IV. STRIKING PLAINTIFF'S UNTIMELY RESPONSE

Plaintiff next claims that the trial court erred in striking its response as untimely, while considering defendant's supplemental brief. We disagree.

As an initial matter, we note that, plaintiff has cited no caselaw to support this argument. " 'It is not sufficient for a party simply to announce a position . . . and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Clay v Doe*, 311 Mich App 359, 365 n 3; 876 NW2d 248 (2015), quoting *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Regardless, we find no error.

"[T]rial courts possess the inherent authority to sanction litigants and their counsel . . . ." *Maldonado v Ford Motor Co*, 476 Mich 372, 389; 719 NW2d 809 (2006). " 'An exercise of the court's 'inherent power' may be disturbed only upon a finding that there has been a clear abuse of discretion.' " *Id.*, quoting *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997).

---

[7] At the time of the hearing, Dickinson's deposition has not yet been transcribed, but plaintiff's counsel admitted that Dickinson had sent an e-mail in July 2019, notifying counsel and the other putative officers that he had found the documents, that they "looked at" the documents, and that counsel provided the documents to defense counsel at the beginning of Dickinson's deposition.

Plaintiff filed its response to the ICS's motion to dismiss on the morning of the hearing. This response was clearly untimely because a response must be served and filed at least three days before the attendant hearing. MCR 2.119(C)(2)(b) and (4). And, plaintiff did not request any grace in the matter. The trial court effectively sanctioned plaintiff by striking its response.

Plaintiff complains that this was arbitrary because the trial court did not similarly sanction the ICS for its late-arriving supplemental brief. However, the parties were not in the same position. As the court stated, it had seen, and thus presumably had a chance to review, the ICS's supplemental brief, filed three days before the November 25, 2019 hearing, but had no such chance to review plaintiff's response filed on the morning of the hearing. Again, the ICS was not dilatory or negligent in filing its supplemental brief, but could not have filed it any earlier, having learned of the new potential violation of the stipulated order the day before. Conversely, plaintiff only provided excuses for its tardiness.

We conclude that the trial court chose a reasonable option in sanctioning plaintiff by striking its untimely written response. Moreover, as earlier discussed, the trial court afforded plaintiff the opportunity to respond orally at the hearing to the issues raised in the motion to dismis, and also the supplemental brief. There was no abuse of discretion here.

## V. REFUSAL TO CONDUCT A FULL EVIDENTIARY HEARING

Plaintiff next claims that the trial court's refusal to conduct a full evidentiary hearing deprived it of its due process right to present evidence to rebut the ICS's assertions that plaintiff violated the stipulated order. We disagree.

We review a trial court's decision whether to hold an evidentiary hearing for an abuse of discretion. *Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004). To the extent this issue invokes due process concerns, constitutional issues present questions of law subject to review de novo. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). However, plaintiff did not request a full evidentiary hearing until its motion for rehearing, and thus, this issue is not properly preserved for our review. See *George*, 329 Mich App at 454. Accordingly, we review this issue for plain error affecting substantial rights. See *Rivette*, 278 Mich App at 328.

"In general, trial courts in our state possess reasonable discretion regarding whether to hold hearings concerning the range of motions that typically come before them." *People v Franklin*, 500 Mich 92, 109; 894 NW2d 561 (2017). A full evidentiary hearing is unnecessary where "there was no dispute with respect to the facts, and it became a question of law to be decided by the court." *In re Skotzke Estate*, 216 Mich App 247, 252; 548 NW2d 695 (1996). But the court should hold an evidentiary hearing if the motion requires resolution of credibility issues. *Williams v Williams*, 214 Mich App 391, 399; 542 NW2d 892 (1995). Further, a litigant has a due process right to the opportunity to be heard in a meaningful time and manner; although that ' "does not [necessarily] mean a full trial-like proceeding, . . . it does require a hearing to allow a party the chance to know and respond to the evidence.' " *Traxler*, 227 Mich App at 288, quoting *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995).

Regarding plaintiff's late disclosure of the bylaws-related discovery, at the hearing, plaintiff's counsel did not dispute, but in fact confirmed, that plaintiff was aware of the documents in July 2019, but did not reveal them until Dickinson's November 2019 deposition, well after the stipulated order's August 26, 2019 deadline. In light of these concessions, it could not be reasonably argued that these underlying facts were contested. Further, the court was able to assess whether the bylaws-related discovery fell within the scope of the ICS's discovery request without recourse to a further hearing.[8] We again note the court's clear awareness of the relevance of the existence of bylaws to the case. Moreover, plaintiff did not elaborate, in either its motion for rehearing, or on appeal, concerning what additional evidence it might have presented to rebut the ICS's position. On this record, plaintiff has not shown that a full evidentiary hearing with respect to the bylaws-related discovery was necessary.

Regarding Stumpf's e-mail and whether it violated the stipulated order, the trial court considered documentary evidence, notably the face of the e-mail and the affidavit of Scott Meyers, an ICS member and a Constant Contact[9] administrator, which suggested, as the court found, that the e-mail was sent to ICS members via the ICS's Constant Contact account. At the hearing, plaintiff was afforded the opportunity to respond to this evidence and did so. Plaintiff admitted that the e-mail was "genuine," and that Stumpf had sent it to ICS members who were not members of the NE Tribe, but denied that Stumpf had accessed or used the current ICS member directory to send it, instead asserting that she had used e-mails from a preexisting membership list. Plaintiff reiterated that argument in its motion for rehearing, and on appeal, stating that it was an "incontrovertible fact" that Stumpf did not access the ICS's current member directory to send the e-mail and elaborated that Stumpf sent the e-mail using Les Thomas's Constant Contact account and Thomas's preexisting list of contacts, which contained many contacts from the ICS, who had provided a membership list to Thomas in 2018. But plaintiff did not offer any evidence to support its assertions contesting the ICS's evidence, and thus failed to establish that a different outcome would have resulted had the trial court held a full evidentiary hearing.

On this record, we conclude that plaintiff has not shown that a full evidentiary hearing was necessary to resolve credibility contests, see *Skotzke Estate*, 216 Mich App at 252, or that the outcome would have been different had an evidentiary hearing taken place, see *Duray Dev*, 288 Mich App at 150. Accordingly, plaintiff has not established that the court's refusal to conduct a full evidentiary hearing amounted to plain error that affected its substantial rights. See *Rivette*, 278 Mich App at 328.

## VI. VIOLATIONS OF STIPULATED ORDER

Plaintiff next claims that the trial court erred in finding that plaintiff violated the stipulated order. We disagree.

---

[8] In its ruling, the court emphasized that plaintiff repeatedly asserted in its discovery responses that no bylaws were adopted, and that various witnesses were expected to testify thus.

[9] Constant Contact was identified as a program ICS used in order to access a database of names and addresses and to generate e-mail to the members of that list.

We review the trial court's factual findings in support of its decision for clear error. MCR 2.613(C); *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Id*.

We are not definitely and firmly convinced that the trial court erred in finding that plaintiff violated the stipulated order's requirement that it provide full and complete discovery responses by August 26, 2019 by failing to timely disclose the bylaws-related discovery Dickinson found in July 2019.[10] Again, central to plaintiff's position that Stumpf and the other putative officers have been the duly elected governing board of the NE Tribe since 2014 is plaintiff's insistence that the NE Tribe governed itself and never adopted any bylaws. Plaintiff did not reveal in its discovery responses that Dickinson had found documents in July 2019 suggesting that the NE Tribe had in fact adopted bylaws. These documents were clearly contrary to plaintiff's repeated assertions that no bylaws existed or that there was no evidence that any bylaws had been adopted, and thus should have been disclosed. But plaintiff first revealed those documents only months after discovering them.

We disagree with plaintiff's assertion that it could not have violated the stipulated order because the ICS never sought the specific bylaws-related documents as part of its discovery requests. However, we think it obvious that those documents fell within the scope of the ICS's discovery request for production, and that plaintiff's answers to the ICS's interrogatories were incomplete for omitting any reference to the bylaws-related documents.

We thus agree with the trial court that plaintiff should have disclosed the bylaws-related documents earlier.

Likewise, we are not left with a definite and firm conviction that the trial court made a mistake in finding that Stumpf's e-mail violated the stipulated order's provision prohibiting plaintiff from thereafter assessing or using information from the ICS's member directory. There is no dispute that Stumpf sent an e-mail to ICS members voicing concern about the current ICS leadership and promoting the opposing candidates running for ICS leadership positions. Plaintiff maintained that the NE Tribe had its own member list, and that Stumpf did not access the ICS's member directory, and that her use of the Constant Contact platform did not necessarily mean that she ever accessed or used the ICS's current member list in violation of the court order. But, the face of the e-mail presents the identifying information of the ICS, not the NE Tribe, and the subject

---

[10] We note that the ICS also argued in its motion to dismiss, as on appeal, that plaintiff violated the stipulated order by providing its discovery responses on August 28 and 29, 2019, a few days after the August 26, 2019 deadline, and by failing to provide full and complete answers as indicated by the deposition testimony of Pete Morse, a putative officer, who allegedly testified that he did not read the complaint, was never provided with discovery requests, and was never asked to gather evidence in response to discovery requests. While the trial court entertained these arguments, it is apparent from the court's ruling that it ultimately relied on plaintiff's conduct in failing to timely disclose the bylaws-related documents as the ground for dismissal.

matter of the e-mail concerned the leadership of the ICS, not the NE Tribe.[11]  Further, Scott Meyers attested that Stumpf "continue[s] to misuse the private contact information of the ICS members and use[s] Constant Contact to impersonate the ICS," that he "used the ICS member directory . . . to transmit emails to the active ICS membership," that he "continue[s] to utilize the ICS Member Directory and send emails through Constant Contact to the ICS membership as if [she is an] authorized member[] of ICS."

A reasonable inference from this uncontradicted evidence is that Stumpf accessed or used the current ICS membership directory, through its Constant Contact platform, when she sent her e-mail to ICS members, in direct violation of the stipulated order, as the trial court found.  While plaintiff attempts to rebut this evidence by asserting that it is an "incontrovertible fact" that Stumpf actually used Les Thomas's Constant Contact account, and a preexisting membership list Thomas had obtained from the ICS in 2018, plaintiff did not offer any evidentiary support for these assertions.[12]  We are not left with a definite and firm conviction that the trial court made a mistake in determining that plaintiff violated the stipulated order prohibiting Stumpf from accessing information from the ICS membership directory.

For these reasons, we conclude that the trial court did not clearly err in finding that plaintiff failed to comply with the terms of the stipulated order.

## VII.  ENFORCEMENT OF STIPULATED ORDER

Plaintiff next claims that the stipulated penalty of dismissal with prejudice was unenforceable as unreasonable, unjust, and contrary to Michigan law, and that the trial court thus erred by imposing it without applying the multifactor test applied by Michigan courts to determine appropriate sanctions for discovery violations.  We disagree.

---

[11] Specifically, the face of the e-mail indicates that it was sent to Kate Burrows, who was the ICS president but not a member of the NE Tribe, from "International Comanche Society-CJ Stumpf." The bottom of the e-mail listed "International Comanche Society" and its address, and stated that it was sent "by cjstumpf@gmail.com In collaboration with Constant Contact."  There was also an unsubscribe feature.

[12] As the ICS argues, even if plaintiff had provided evidentiary support for these assertions, Stumpf's conduct arguably fell within the intended scope of the stipulation prohibiting her from thereafter accessing information from the ICS's member directory. To the extent there was ambiguity regarding whether the stipulation prohibited access to, and use of, information from only the current ICS membership list, it is apparent that the purpose of the stipulation was to prohibit Stumpf and the putative officers from accessing information from the ICS's member directory to communicate with the ICS membership.  See *Whitley v Chrysler Corp*, 373 Mich 469, 474; 130 NW2d 26 (1964) (A stipulation must "be read and construed in the light of the surrounding circumstances and the whole record . . .").

Plaintiff did not challenge the enforceability of the stipulated order until its motion for rehearing, and then offered only brief argument to that effect.[13] Thus, this issue is not preserved for this Court's review, *George*, 329 Mich App at 454, and so our review is for plain error that affected substantial rights, *Rivette*, 278 Mich App at 328.

Moreover, this Court has recognized that "[a] party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001) (quotation marks and citation omitted). Accordingly, plaintiff waived appellate objections in connection with its own stipulation to entry of an order of dismissal for failure to strictly comply with the specified discovery deadline. Accordingly, the trial court properly enforced the stipulated order.

## VIII. DISPOSITION OF NE TRIBE'S FUNDS

Plaintiff lastly claims that the trial court erred by directing the NE Tribe to turn its funds over to the ICS during the lawsuit. We disagree.

At the hearing on plaintiff's motion for a temporary restraining order and preliminary injunction, plaintiff's counsel asked the trial court for guidance with respect to the funds of the NE Tribe given that there were two governing boards competing for legitimacy. After argument on the matter, the court, recognizing that the funds originated from dues that members paid to the ICS, a portion of which were then designated for, and distributed to, the various tribes, directed that "all funds in possession and/or control of the Plaintiff, as of April 8, 2019, shall be paid to the order of" the ICS. ICS's counsel assured the court that the funds would be used for the benefit of the NE Tribe.

We review a trial court's order providing for injunctive relief for an abuse of discretion. *Hammel v Speaker of the House of Representatives*, 297 Mich App 641, 647; 825 NW2d 616 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015). A court's factual findings in support of its decision to grant injunctive relief are reviewed for clear error. *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 9; 596 NW2d 620 (1999). See also MCR 2.613(C).

As plaintiff asserts, injunctive relief "may not be arbitrary, but rather must be in accordance with the fixed principles of equity jurisdiction and the evidence in the case." *Davis v Detroit Fin Review Team*, 296 Mich App 568, 612; 821 NW2d 896 (2012). However, we do not agree that

---

[13] Likewise, on appeal, plaintiff's challenge to the enforceability of the stipulated order is brief and largely undeveloped, and plaintiff does not cite any on-point caselaw supporting its argument that the parties could not legally stipulate to dismissal as a remedy for a discovery violation. Again, " 'It is not sufficient for a party simply to announce a position . . . and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Clay*, 311 Mich App at 365 n 3; quoting *Wilson*, 457 Mich at 243.

the trial court's decision to transfer the NE Tribe's funds to the ICS during the litigation was arbitrary or otherwise unreasonable. The ICS and the NE Tribe are related, given that the regional tribes are branches of the ICS, and the NE Tribe members are ICS members who pay dues to the ICS. Because the NE Tribe's funds derived are from membership dues that ICS members paid to the ICS, a portion of which was then designated for, and transferred to, the NE Tribe, it was reasonable for the trial court to order that the ICS retain the funds until the underlying dispute was resolved.[14] This maintained the status quo while protecting the Tribe's funds. See *Psychological Services of Bloomfield, Inc v Blue Cross and Blue Shield of Mich*, 144 Mich App 182, 185; 375 NW2d 382 (1985) ("The object of a preliminary injunction is to preserve the status quo, so that upon the final hearing the rights of the parties may be determined without injury to either."). While plaintiff asserts that the trial court's order "deprived Plaintiff of all of its existing funding sources and materially impaired its ability to conduct its business and affairs," plaintiff offers no evidence to support this assertion.[15] On this record, we cannot say that the trial court's decision directing the NE Tribe to surrender its funds to the ICS fell outside the range of reasonable or principled outcomes. See *Frankenmuth Ins*, 311 Mich App at 445.

Plaintiff asks this Court to remand the matter for a determination of the rightful ownership of the NE Tribe's funds. We disagree that such a judicial determination is required. Although the order does not specify whether preliminary or permanent relief was intended, it is apparent from what was said at the hearing on plaintiff's motion for a temporary restraining order that the court's directive transferring the NE Tribe's funds to the ICS was meant to be a temporary resolution pending determination of which of two competing Tribe treasurers was the legitimate officeholder. See *Int'l Union v Michigan*, 211 Mich App 20, 26; 535 NW2d 210 (1995) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.") (quotation marks and citation omitted). Remand is not necessary for a determination of rightful ownership of the subject funds now that the case has been finally resolved in defendant's favor.[16] There is no indication that the NE Tribe's now-recognized officers have since challenged the disposition or ownership of the Tribe's funds, and the ICS argued that the issue was moot given the dismissal of plaintiff's complaint. In the absence of any current controversy between the NE Tribe and the ICS regarding the control and possession of the funds, such a determination would be premature. See *Huntington Woods v Detroit*, 279 Mich App 603, 616; 761 NW2d 127 (2008) ("The existence of an actual controversy is a condition precedent to

---

[14] The record supported the trial court's findings regarding the origin of the NE Tribe's funds. Specifically, the ICS's bylaws state that Tribes are branches of the ICS formed with approval of the ICS Board, and "members" of the ICS are "persons who have been received into membership upon making application therefore and who have paid dues for the current year." Plaintiff admitted that the NE Tribe dues are paid to the ICS and the ICS forwards the funds to the Tribe.

[15] Plaintiff did not make any allegations that the ICS, in exercising its control over the NE Tribe's funds, misspent or otherwise mismanaged the funds.

[16] "A dismissal *with* prejudice amounts to an adjudication on the merits." *Grimmer v Lee*, 310 Mich App 95, 102; 872 NW2d 725 (2015).

invocation of declaratory relief and this requirement prevents a court from deciding hypothetical issues.") (quotation marks and citation omitted).

Affirmed.

/s/ David H. Sawyer
/s/ Cynthia Diane Stephens
/s/ Michelle M. Rick