*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JCM, Minor.

UNPUBLISHED
January 20, 2026
11:59 AM

No. 368224
Berrien Circuit Court
Family Division
LC No. 2013-000407-GM

### AFTER SECOND REMAND

Before: YATES, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order denying her petition to terminate petitioner-grandparents' guardianship of JM, a minor child.[1] This Court previously remanded this case for the probate court to "articulate its findings on the best-interest factors on the record, taking into account up-to-date information." See *In re JCM Minor*, unpublished opinion of the Court of Appeals, issued May 30, 2024 (Docket No. 368224) (*JCM I*); *In re JCM Minor*, unpublished order of the Court of Appeals, entered May 30, 2024 (Docket No. 368224). When this case returned to this Court after that first remand, this Court again concluded that the trial court had not adequately articulated its findings of fact and conclusions regarding the relevant best-interest factors found in MCL 700.5101(a), and we remanded for a second time, stating in relevant part:

> On remand, the trial court should make findings regarding each relevant factor and, where appropriate, either make findings regarding both petitioners and respondent or state its rationale for not making findings with regard to a party. The trial court

---

[1] In previous opinions in this matter, we have referred to JM's mother as "respondent" and to JM's grandparents/guardians as "petitioners." This is consistent with the parties' earlier usage of the terms, given that JM's grandparents had originally filed a "petition" for a guardianship over JM. More recently, however, the usage of the terms at times has been reversed, presumably because JM's mother later filed a "petition" to terminate the guardianship. For clarity, we will refer to respondent-mother as "mother" and to petitioner-grandparents/guardians as "grandparents."

should also state, for each factor, whether the court has concluded that the factor favors respondent, petitioners, both, or neither party, and why. In other words, the trial court should link its conclusion regarding each factor to its factual findings under that or another factor. The trial court should also indicate the relative weight it has given a factor where appropriate—for example, if the trial court determines that a factor favors a particular party, but should be given no or very little weight in light of other factors. And in making its findings, the trial court should not rely on evidence that was not admitted into the record. *Kuebler*, 346 Mich App at 660. The trial court should consider up-to-date information when doing so. See *Pierron v Pierron*, 282 Mich App 222, 262; 765 NW2d 345 (2009). [*In re JCM Minor (After Remand)*, unpublished opinion of the Court of Appeals, issued March 19, 2025 (*JCM II*).]

Mother's appeal is now once again before this Court. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In this Court's previous two opinions, we summarized the history of this case from its inception to the issuance of this Court's opinion in *JCM II*, and we will not repeat it here. Following our second remand, the trial court held a two-day evidentiary hearing on April 14 and April 16, 2025, to give the parties the opportunity to provide up-to-date information relating to the period of time following the trial court's denial of mother's petition to terminate the guardianship on June 8, 2024.

The trial court heard testimony from JM's grandmother, who testified that JM was doing well in school, having attained mostly A's and B's on her most recent report card and scoring above the class mean in most subjects on a recent standardized test. She testified that JM has some difficulties in some of her classes, and that she and JM's grandfather had worked with her to address those difficulties using techniques recommended by JM's psychological evaluator. JM's grandmother also testified that grandparents had assisted JM in becoming involved in school athletics, as recommended by her individual counselor, and that JM was currently on the basketball, volleyball, and track teams. JM's grandmother opined that JM's participation in sports had increased JM's confidence. JM's grandmother testified that JM's mother had attended one out of ten of JM's volleyball games and one out of ten of her basketball games; grandparents had taken JM to all of her games and had provided her with the necessary equipment.

JM began having overnight parenting-time visits with mother in June of 2024. Grandparents noted that JM was initially tired after the visits, but that JM began to sleep better in November after mother purchased a "noise machine" to help her sleep. JM's grandmother testified that JM once had to leave school early because she was tired after a parenting-time visit. JM's grandmother also testified to an incident in July 2024 in which JM called her during a parenting-time visit and was upset and crying due to the behavior of JM's half-sister. JM's grandmother stated that she prompted JM to use relaxation techniques JM had been taught by her individual therapist, and that JM reported that she was okay a few hours later. JM's grandmother also discussed a similar incident in which JM contacted her by text message during another parenting-time visit in July.

JM's reunification therapist testified that he generally met with JM and mother twice a month. The reunification therapist opined that the relationship between mother and JM had improved since June 2024; specifically, the therapist had observed that JM was generally happy during the sessions and was much more of an active participant than she had been previously. The therapist testified that JM had raised the issue of her difficulty sleeping at mother's home, which had been addressed with the purchase of a white-noise machine. The therapist stated that since the purchase of the white-noise machine, he believed that the majority of times that JM had appeared fatigued could be attributed to her high activity level and participation in sports. The therapist stated that mother would apologize to JM for missing her sports games and that JM appeared to be understanding, although JM was extremely pleased when mother did attend a game. The therapist expressed a concern about the amount of time JM was allowed to use electronic devices in grandparents' home, stating that he believed that there were no rules concerning how long or often JM could use her phone or electronic devices at bedtime or other times during the day. The therapist stated that mother had expressed concern that JM was allowed to stay up too late texting her friends or otherwise using her phone. The therapist admitted, however, that he had not asked grandparents whether they had imposed rules regarding electronic device use. The reunification therapist opined that JM's home environment with both mother and grandparents was stable.

JM's grandfather testified that, contrary to the reunification therapist's belief, there were rules in place at their home limiting JM's use of her phone and electronics at night, and limiting the Internet content she could access. JM's grandfather opined that JM was "responsible" about using her cellphone, but that she had to be monitored for excessive use like most fourteen-year-olds. JM's grandfather testified that he helped JM with her math homework and encouraged her in her athletic pursuits.

After the hearing, the trial court interviewed JM *in camera*. On October 14, 2025, the trial court issued a written opinion and order detailing its findings and conclusions regarding the best-interest factors found in MCL 700.5101(a) and holding that it was in JM's best interests to deny mother's petition for termination of the guardianship. The case then returned to this Court for appellate review of that determination.[2]

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's dispositional rulings. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). A trial court abuses its discretion when it chooses an outcome outside the range of principled outcomes. *Id.* A trial court necessarily abuses its discretion when it makes an error of law. *TM v MZ (On Remand)*, 326 Mich App 227, 235-236; 926 NW2d 900 (2018). This Court reviews de novo questions of law, *In re*

---

[2] This Court granted mother's motion to file supplemental briefing in November 2025 and accepted the supplemental brief filed with that motion. See *In re JCM Minor*, unpublished order of the Court of Appeals, entered November 25, 2025 (Docket No. 368224). We granted grandparents' motion to extend time to file a responsive brief in December 2025. See *In re JCM Minor*, unpublished order of the Court of Appeals, entered December 10, 2025 (Docket No. 368224). Grandparents filed their responsive brief with this Court on December 16, 2025.

*Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008), including whether the trial court complied with our remand order, *Kalamazoo v MDOC (After Remand)*, 229 Mich App 132, 134-135; 580 NW2d 475 (1998). This Court reviews for clear error a trial court's factual findings made after an evidentiary hearing, *In re MSL Minor*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368581), slip op at 6, giving regard to the trial court's special opportunity to judge the credibility of witnesses who appeared before it, MCR 2.613(C). A finding is clearly erroneous when this Court, after reviewing the entire record, is left with the definite and firm conviction that a mistake was made. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000).

## III. ANALYSIS

Mother argues that the trial court abused its discretion by denying her petition to terminate JM's guardianship. We disagree.

At the outset, we disagree with mother's argument that the trial court failed to comply with this Court's second remand order. Although mother continues to argue that the trial court's findings of fact were impermissibly based on a 2023 report prepared by JM's lawyer-guardian ad litem (LGAL), the record does not support that assertion. The trial court specifically stated that the report was not admitted into evidence, and it clarified that the arguments of the LGAL at various hearings were just that—arguments, rather than evidence. The trial court was permitted to consider the recommendation of the LGAL in making its best-interest determination. See *Kuebler v Kuebler*, 346 Mich App 633, 660; 13 NW3d 339 (2023); see also MCL 722.27(d)(1). The record does not support mother's argument that the trial court impermissibly admitted, and relied upon for its factual findings, a report containing inadmissible hearsay. See *Kuebler*, 346 Mich App at 661. Accordingly, mother is not entitled to relief on this basis.

As stated in our previous opinions, MCL 700.5101(a) defines "best interests of a minor" in the context of guardianship proceedings as "the sum total of the following factors to be considered, evaluated, and determined" by the trial court:

> (i) The love, affection, and other emotional ties existing between the parties involved and the child.

> (ii) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue educating and raising the child in the child's religion or creed, if any.

> (iii) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (iv) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

> (v) The permanence, as a family unit, of the existing or proposed custodial home.

> (vi) The moral fitness of the parties involved.

(vii) The mental and physical health of the parties involved.

(viii) The child's home, school, and community record.

(ix) The child's reasonable preference, if the court considers the child to be of sufficient age to express a preference.

(x) The party's willingness and ability to facilitate and encourage a close and continuing parent-child relationship between the child and his or her parent or parents.

(xi) Domestic violence regardless of whether the violence is directed against or witnessed by the child.

(xii) Any other factor considered by the court to be relevant to a particular dispute regarding termination of a guardianship, removal of a guardian, or parenting time.

A trial court need not discuss every contested issue under each factor at length, but must articulate its findings and conclusions in sufficient detail to permit appellate review. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005).

In this case, the trial court made detailed findings under each best-interest factor, and it stated whether each factor favored mother or grandparents, even going so far as to assign a numerical value to its findings under each factor indicating the degree to which it favored each party. The trial court was certainly not required to create or use such a numerical scoring system or, if it did use such a system in forming its own conclusions, include the scoring in its order regarding the petition to terminate the guardianship. But we can hardly fault the trial court for erring on the side of completeness. Mother argues that the trial court's numerical scoring system was nonsensical or even contradictory; however, the trial court clearly articulated its conclusions regarding whether each factor favored a particular party, and the numbers allow at least a rough determination of the extent to which the court found that it favored one party over the other.

Regarding Factor (i), the trial court found that this factor favored grandparents, noting that the evidence, including the testimony of JM's therapist, and JM's multiple in-camera interviews, supported the conclusion that JM had deep love, affection, and emotional ties for grandparents. Further, the trial court noted that although the evidence presented at the hearing indicated that the bond between JM and mother had deepened, this relatively recent strengthening of the bond between JM and mother did not outweigh the bond between JM and grandparents. Mother presents no specific argument concerning this factor, but notes that the trial court heard evidence that the bond between JM and mother had strengthened since June 2024. The trial court accounted for this recent progress, and we are not left with a definite and firm conviction that a mistake was made regarding this factor. *Walters*, 239 Mich App at 456.

Regarding Factor (ii), the trial court found that this factor favored grandparents, noting that the evidence showed that grandparents had significantly aided JM in overcoming obstacles to her emotional and academic development. As with Factor (i), the trial court acknowledged the recent progress of the relationship between mother and JM, but found that it did not indicate that mother would be able to match grandparents' ability to provide JM with the necessary guidance, safety,

and security needed for her to continue to make progress on overcoming or managing her special needs. This finding is not clearly erroneous. *Id.* For example, the reunification therapist testified that, for a variety of different reasons (including mother's inability to find childcare for her other child or lack of transportation), mother had missed the majority of JM's sporting events despite being aware of the schedule; additionally, the evidence showed that mother was mostly uninvolved with JM's academics and athletics.

Regarding Factor (iii), the trial court found that this factor slightly favored grandparents, who had a demonstrated history of providing for JM. The trial court noted that neither party "is of exorbitant means" but found that mother and grandparents would both do the best they can to provide for JM's material and medical needs. The trial court did not clearly err regarding this factor. *Id.* Although mother and grandparents both indicated that they could provide for JM's basic needs, the record does show that mother struggled with some issues, such as available childcare or financial constraints, that could potentially impact her ability to provide for JM's material needs, accounting for the slight weight in favor of grandparents on this factor.

Regarding Factor (iv), the trial court found that this factor favored grandparents, noting that JM had lived with grandparents in a stable satisfactory environment for nearly her entire life, and that the recent expansion of mother's parenting time to include overnight stays did not outweigh this reality. We find no clear error in the trial court's finding regarding this factor. *MSL*, ___ Mich App at ___; slip op at 6.

Regarding Factor (v), the trial court found that this factor favored grandparents, noting that grandparents had lived together in the same home for 45 years, while mother currently lived with a significant other in a committed relationship of several years. This finding is supported by the record and is not clearly erroneous. *MSL*, ___ Mich App at ___; slip op at 6.

The trial court found that Factor (vi) did not favor one party over the other, and mother does not challenge this finding.

Regarding Factor (vii), the trial court found that this factor slightly favored grandparents, noting that mother and JM's grandfather both had mental health issues that were currently well-controlled with "minimal impact currently in either home." While the trial court's statement arguably supports a finding that this factor did not favor one party over the other, such a finding would not have altered the trial court's, or this Court's, ultimate best-interest determination.

Regarding Factor (viii), the trial court found that this factor heavily favored grandparents. As discussed, the evidence presented to the trial court showed that grandparents are JM's primary support system for academics and school and community athletics, and that JM had made significant progress in those areas. The trial court's finding regarding this factor was not clearly erroneous. *MSL*, ___ Mich App at ___; slip op at 6.

Regarding Factor (ix), the trial court noted that it had conducted a third *in camera* interview with JM, and that she had continued to express the desire to remain under grandparents' care. While, as mother points out, the reasonable preference of the child is generally not specified in best-interest determinations (as doing so would essentially defeat a major purpose of the *in camera* interview of the child, avoiding forcing a minor child to publicly choose one parent or guardian

over the other), the trial court did indicate that JM had already informed mother of her preference. This Court did not intend that its request for further clarification by the trial court be taken as requiring the trial court to explicitly state JM's preference in an order; however, under the specific circumstances of this case, it would appear that minimal harm resulted. Mother also argues that the trial court erroneously gave "extreme weight" to this factor, especially in light of JM's special needs and difficulties with emotional regulation. We disagree. A child's reasonable preference "does not automatically outweigh the other factors, but is only one element evaluated to determine the best interests of the child." *Treutle v Treutle*, 197 Mich App 690, 694-695; 495 NW2d 836 (1992). In this case, the trial court found that the majority of the best-interest factors favored grandparents, with some factors either neutral or inapplicable. This is not a situation in which the trial court impermissibly prioritized JM's preference over other factors that favored mother. *Id.* Accordingly, we find no clear error in the trial court's finding regarding this factor. *MSL*, ___ Mich App at ___; slip op at 6.

Regarding Factor (x), the trial court found that this factor favored grandparents, noting that grandparents were "open to cooperation and joint efforts" regarding JM, while mother continued to display "acrimony" toward grandparents. The trial court observed mother's demeanor during the latest evidentiary hearing and concluded that mother's hostility toward grandparents was "painfully obvious," even noting that mother mouthed "liar" at points during grandfather's testimony. The transcript of the evidentiary hearing contains numerous interjections by mother expressing disagreement with grandparents' testimony, although it did not capture any statements by mother using the word "liar." Nonetheless, giving regard to the trial court's superior position to judge the demeanor of witnesses before it, see MCR 2.613(C), we are not left with a definite and firm conviction that a mistake was made regarding this factor. *Walters*, 239 Mich App at 456.

The trial court found that Factor (xi) was not applicable in this case, and mother does not challenge that finding.

Regarding Factor (xii), the trial court attempted to clarify its previous finding under this factor, stating that the previous written decision reflected the trial court's attempt to "temper" the high tensions between the parties and avoid unnecessary strain on the then 11-year-old JM, at the cost of some clarity in appellate review. We appreciate the trial court's explanation and the valuable reminder that family courts are often placed in difficult situations involving highly contentious adults and emotionally vulnerable children. As the trial court did not weigh this factor in favor of either party, it appears that the trial court found it inapplicable to its best-interest determination. We find no error regarding this factor. *Walters*, 239 Mich App at 456.

The trial court concluded that the best-interest factors favored the denial of mother's petition to terminate the guardianship. Because its factual findings were not clearly erroneous, and supported that conclusion, the trial court did not abuse its discretion. *Guardianship of Redd*, 321 Mich App at 403. Accordingly, we affirm.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ James Robert Redford